SCHEB, Judge.
This case presents the question whether a buyer which defaults on several contracts procured for it by a broker may be liable to that broker for commissions.
Specifically, the plaintiff/appellee Touch-ton sought recovery for commissions from defendant/appellant in respect to two land transactions occurring in Boynton Beach, Florida, referred to as the Moore and Waite parcels, where the plaintiff produced contracts in July and September 1973, respectively; a transaction in Sanibel Island, Florida, known as the Anderson parcel, on which the plaintiff produced a contract in September 1973; and an Arkansas deal known as the Inman property contracted for in August 1973. The court directed a verdict in favor of the defendant as to the parcel in Arkansas, but the remaining transactions[1] were considered by the jury which awarded the plaintiff a general verdict of $26,375.[2] By stipulation of the parties $6,038.09 was added to the verdict. After allowing $788.57 as interest, and $282 for court costs, the trial judge entered an amended final judgment in favor of the plaintiff for $33,483.66. This appeal ensued with the defendant contending the trial court erred in failing to direct a verdict in its favor as to all the transactions in issue. On cross-appeal, the plaintiff contends that the court erred in directing a verdict against it on the Inman transaction. We affirm in part, reverse in part, and remand for entry of a modified judgment in favor of the plaintiff.
The plaintiff and defendant had a series of business relationships during 1972 and 1973. During this time the defendant, through its chairman of the board, Robinson Callen, purchased several properties through the plaintiff and paid the plaintiff a series of real estate commissions. During their early relationship in July 1972, the plaintiff broker agreed with Mr. Callen that the plaintiff:
“. . . waive[d] any right to a forfeited earnest money deposit and . assign[ed] any portion of said forfeited monies normally retained by the broker to H.I. Resorts, Inc. and/or Robinson Cal-len.”
*856 The plaintiff claimed, however, that such understanding did not prevail in respect to the various transactions in this suit. Rather, plaintiff Touchton testified that his claims for commissions were based upon a subsequent meeting with Callen in May 1973. According to Touchton’s testimony, at that time they had a meeting in Callen’s home during which Callen said he wanted to expand H.I. Resorts by acquiring several new sites for motels. He wanted Touchton to visit these prospective sites, at Touch-ton’s own expense, and procure contracts if the land proved desirable. In response to this new proposal, Touchton asked Callen:
“Mr. Callen, in other words, if I obtained a binding contract at the price and terms acceptable to you and the contingency of the contract are met at these various locations then I at that time I have performed and earned a commission.”
and Callen replied “yes.”

Boynton Beach Transactions

When Callen, on behalf of the defendant, indicated an interest in obtaining motel sites in the Boynton Beach area, plaintiff associated a Boynton Beach real estate broker, Larry Giddens. Thereafter these brokers produced a contract dated July 19, covering a parcel of land and signed by the seller, Moore. It is unclear as to the exact date on which Callen signed this agreement; however, an addendum signed by Moore but not by Callen is dated July 24. Since his co-broker Giddens expressed concern about his right to receive a commission on the transaction, Touchton requested Cal-len to reduce to writing his agreement about paying a commission. By letter dated July 23, addressed to both Touchton and Giddens, Callen referred to the Moore property and stated:
“. . . when, as and if I and/or a corporation of which I am a principal takes title to the above property, I will pay total commission of twenty thousand dollars.”
At trial, Touchton testified that he received this letter, glanced at it and filed it, not realizing at the time that it did not correctly state their oral agreement. On rebuttal, he testified that if he had perceived the “as, if or when” clause, he would have strenuously objected to it.
In the other Boynton Beach transaction, Touchton and Giddens produced a contract signed by Waite in September 1973. Unlike the Moore contract, the Waite contract contained an express provision whereby Callen had agreed “. . .to pay Larry T. Gid-dens and Dewey Touchton, cooperating brokers, a commission of $6,375.00.” When the defendant failed to close both the Moore and Waite transactions, the sums deposited as earnest money were forfeited.
Defendant contends that his agreement of July 1972, contemplated there would be no liability for commissions on either the Moore or Waite deals since the earnest money was forfeited; and further, that Cal-len’s letter of July 23, 1973, to Touchton and Giddens on the Moore deal, emphasized the understanding was that there would be no liability on the defendant unless title passed to the buyer. Furthermore, at trial defendant objected to testimony about the alleged oral contract of May 1973, on the ground that testimony was inconsistent with the understanding evidenced by the letters of July 1972 and July 23, 1973, and therefore, violated the Parol Evidence Rule. Defendant contends the trial judge erred in denying its motion for a directed verdict on both transactions.
We find no merit to these contentions as they relate to the July 1972 agreement. Clearly the Parol Evidence Rule would not bar introduction of evidence of a subsequent oral contract which modified the former existing agreement between the parties. 13 Fla.Jur., Evidence, § 387.
We next consider these contentions as they relate to the letter of July 23, 1973, in which the buyer set forth his understanding of the prior oral agreement.
To begin with, the defendant did not plead estoppel or prove any change of position in reliance upon plaintiff’s silence. In a case remarkably similar, a similar type letter was sent to confirm an oral brokerage contract. The broker receiving it voiced no objection to the understanding *857 evidenced by the letter he received, but at trial, contended the letter did not accurately state his understanding. There, the court held that silence upon receiving the letter, while of evidentiary value on the question of whether the letter accurately reflected the conversation and agreement of the parties, did not constitute an assent as a matter of law. Thus, the court upheld a verdict in favor of the party who had received the letter and voiced no objection. See Trainer v. Fort, 1933, 310 Pa. 570, 165 A. 232. We agree with the court’s holding in Trainer.
While we recognize that a buyer is not liable for a real estate commission in the absence of an agreement, Tutko v. Banks, Fla.App.3d 1964, 167 So.2d 110, here the alleged oral contract of May 1973, was a basis for recovery. While the testimony of the parties sharply conflicted as to their understanding of when a commission was due, we conclude there was sufficient evidence on behalf of Touchton for the jury to find as it did in respect to liability of the defendant as to both the Moore and Waite deals. Since on a motion for directed verdict all facts and reasonable inferences are weighed in favor of the nonmovant, Hartnett v. Fowler, Fla.1957, 94 So.2d 724, the court did not err in failing to grant the defendant’s motion for directed verdict as to the Moore and Waite transactions.
But, the court erred in permitting the jury to make an award to Touchton for not only his commission but also for a commission for Giddens as well. Touchton and Giddens both assisted the defendant in obtaining properties. Giddens originally was associated by Touchton. There is some conflict in the evidence as to whether Giddens was a sub-agent of Touchton’s or whether, as a result of the relationship which developed with Callen, he had become an agent for the defendant. Giddens was not a plaintiff in this litigation. The record reflects that during the conference on instructions, Touchton’s counsel advised the court that Touchton waived any right of recovery for any sums due Giddens.[3] Notwithstanding, over the defendant’s objection, the court instructed the jury that if they found Giddens to be a sub-agent:
“. . . plaintiff is entitled and obligated to bring the action for the commissions due on the transaction, and, he, in turn, is obligated to divide his commission with any co-broker or sub-agent.”
And, over the defendant’s further objection, the plaintiff was permitted to argue for commissions due both himself and Giddens. On appeal, plaintiff argues the court’s instruction was correct, since Giddens was Touchton’s sub-agent. In view of the waiver on behalf of Touchton, it is unnecessary to determine whether Giddens’ right of action would be vested in Touchton or whether he was the defendant’s agent entitled to maintain a direct action. Cf., Whidden v. Morse, Fla.App.2d 1968, 213 So.2d 625.
Plaintiff Touchton, in his posture in this suit, was entitled to recover only on his behalf. The trial judge erred in not instructing the jury to this effect.

Sanibel Island Transaction

Touchton associated San Carlos Realty as a co-broker and obtained a signed contract for the defendant in September 1973, on a motel site on Sanibel Island, referred to as the Anderson tract. The contract acknowledged receipt of $10,000 earnest money and provided the seller would pay a commission in that amount to the broker, with the stipulation that if the earnest money was forfeited, the deposit was to be divided, with $5,000 to be paid to the seller and $5,000 to be divided between the two brokers. Defendant defaulted and the parties to the contract directed Touch-ton to distribute $5,000 of the earnest money back to defendant and $4,000 to the seller, leaving only $1,000 to be divided between the two brokers. Touchton complied, withdrawing $425 as his own share and leaving $75 in his escrow account.
Touchton’s complaint asked for $2,075 as commission for this transaction. At trial he *858 derived this figure by subtracting the $425 already received from the $2500 due under the terms of the contract. Yet, over defendant’s objection, the trial judge instructed the jury the plaintiff could recover against the defendant as a buyer on a quantum meruit basis and permitted the plaintiff to argue he was entitled to $30,000 on this transaction.
Since the plaintiff’s own testimony acknowledged entitlement to a specific sum for commission, we have considerable doubt that it was proper to allow an instruction on a quantum meruit theory. See Tobin & Tobin Insurance Agency, Inc. v. Zeskind, Fla.App.3d 1975, 315 So.2d 518; Solutec Corp. v. Young & Lawrence Associates, Inc., Fla.App.4th 1971, 243 So.2d 605. However, we need not reach this or the other points raised by the defendant, for when the Anderson deal terminated, Touchton, as escrow agent, acknowledged the seller was the responsible party for a commission and then disbursed the escrow funds remaining, paying unto himself the sum he claimed. And, while he contends this was in compliance with requirements of Florida Real Estate laws and regulations, upon his check to H. I. Resorts he wrote the notation, “Refund in full settlement of binder deposit re: Anderson — Periwinkle tract as per agreement.” He gave no notice of reserving any rights against the defendant. Upon disbursement of these funds, Touchton waived any further rights to a commission from the buyer. The plaintiff received commissions to the extent of his legal entitlement. We conclude that the trial court erred in failing to grant defendant’s motion for a directed verdict on this transaction since the evidence was not legally sufficient to sustain plaintiff’s claim.

Arkansas Transaction

In August 1973, while checking out some potential motel sites, Touchton signed a contract to purchase a tract of land in the Alma, Arkansas area. He assigned his rights to purchase to the defendant and was reimbursed for his initial deposit. This tract, known as the Inman property, was scheduled to close on October 2,1973. Five days before closing the defendant was informed of a title defect. Defendant successfully argued to the trial court that he had never been advised that the defect in title had been corrected and further that no one had ever tendered a deed or made a demand for performance against him. Eventually the defendant demanded a return of the deposit. The evidence supports the defendant’s contention that the transaction was abandoned. The trial judge did not err, therefore, in directing a verdict in favor of the defendant on this transaction.
We find that taken in the light most favorable to the plaintiff, there was evidence which justified only so much of the jury’s verdict of $26,375 as would sustain an award of $10,000 to the plaintiff in respect to the Moore transaction and $3,187.50 as a result of the Waite transaction. To this, $6,038.09 must be added as stipulated by the parties. Accordingly, we reverse in part, affirm in part, and remand to the trial court for vacation of the amended final judgment of $33,483.66, and for entry of a judgment in favor of the plaintiff in the amount of $19,225.59, plus interest thereon, together with such court costs, not to exceed $282, as the trial judge determines appropriate.
BOARDMAN, Acting C. J., and GRIMES, J., concur.

. On cross-appeal the plaintiff does not challenge the trial court’s ruling which directed a verdict in favor of the defendant on a further transaction involving the Royal parcel on Sani-bel Island.

. Our review of the entire record strongly suggests that the jury’s verdict of $26,375 was composed of an award of $20,000 on the Moore contract and $6,375 on the Waite parcel, with no allowance on the Anderson transaction.

. This is consistent with the testimony of Gid-dens who explained that if the Moore and Waite transactions did not close, that he was not entitled to receive any commissions.