366 So.2d 777 (1978)
Joseph GREENE, Appellant,
v.
Patsy J. FLEWELLING et al., Appellees.
No. 78-78.
District Court of Appeal of Florida, Second District.
December 15, 1978.
Rehearing Denied January 29, 1979.
*778 Thomas F. Icard, Jr. and Thomas J. Roehn of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for appellant.
Lynn H. Groseclose and Kingswood Sprott, Jr. of Sprott & Groseclose, Lakeland, for appellees.
SCHEB, Judge.
Appellant Greene obtained a favorable jury verdict for damages in an action arising out of an automobile accident. The trial court set aside the jury verdict on the grounds that it was not supported by competent, substantial evidence. This appeal by Greene ensued. We affirm.
On October 24, 1976, a car driven by appellee Patsy Flewelling collided with a Volkswagen bus driven by appellant Greene. A passenger in Greene's bus sued the Flewellings, who in turn filed a third-party complaint against Greene. Greene then filed a third-party counterclaim against the Flewellings seeking to recover for his personal injuries.
Greene's passenger settled with the Flewellings, and the cause went to trial on the Flewellings' claim against Greene and Greene's counterclaim against them. The jury found Mrs. Flewelling 100% negligent, and awarded Greene $20,600. Upon motion by the Flewellings the court set aside the jury's verdict and entered judgment in favor of Greene for $550, the stipulated amount of his property damage.
On this appeal Greene argues that the trial court erred in overturning the jury's verdict. He also contends that the trial judge erred in refusing to give a jury instruction concerning a "serious, nonpermanent injury."[1] Since both of these contentions *779 depend to a large extent upon the evidence presented at trial, it is necessary that we review the testimony in some detail.
To support his claim Greene presented his own testimony, that of his wife, and the deposition of a physician who had examined him. First to testify was Greene's wife. She said that her husband had been released from the hospital several hours after the accident, but that he was in considerable pain from various bruises and lacerations for about a month. She said she first discovered that her husband could not smell several days after the accident when she came home and detected a pungent odor of gas in the house. Mrs. Greene asked her husband if he could smell anything and he said he could not. She then checked the stove and found the pilot light was out and that it was emitting gas. Alarmed, she presented a number of household substances to her husband and asked him if he could smell them. He said he could not. Mrs. Greene further testified that her husband subsequently informed her that he could not taste either. She noted that his condition had not improved as of the time of trial, slightly over a year after the accident.
The deposition of Dr. DeWeese, a neurosurgeon, was next introduced into evidence. The doctor said that Greene had been referred to him about a month after the accident because of his claimed loss of smell. He said that Greene had told him he could smell before the accident, but could not afterwards.[2] Dr. DeWeese asked Greene to smell various pungent substances around his office, but Greene reported that he could not smell any of them. The doctor explained that when a person loses his sense of smell it usually means the olfactory nerves have been damaged in some manner; yet, in his opinion Greene had not sustained the type of injury that would damage the olfactory nerves. Dr. DeWeese said he had no way of predicting when or if Greene would regain the ability to smell and taste, and concluded that Greene suffered from "a subjective complaint that can't be corroborated with objective findings."
Greene testified that he could not recall anything about the accident itself, or how he received his injuries. He said he remembered very little until two days after the accident, at which time he recalled being in pain from rib, neck, head, and back injuries. He said he had never had any trouble with his senses of smell and taste before the accident. He corroborated the incident his wife had related about his not being able to smell gas from the stove, and referred to various other instances when he had not been able to smell or taste.
At the conclusion of the evidence the Flewellings moved for a directed verdict. The trial judge, while expressing considerable doubt as to whether the evidence was sufficient to sustain Greene's personal injury claim, reserved his ruling on the motion. See Fla.R.Civ.P. 1.480(b).
The jury was then instructed that it could return damages in favor of Greene for his personal injuries if: (1) Mrs. Flewelling was found to be negligent; (2) Greene sustained a "permanent loss of bodily function"; and (3) Mrs. Flewelling's negligence was the legal cause of Greene's personal injuries. The jury answered all three of these questions affirmatively and awarded Greene $20,600 in damages.
The Flewellings then moved to have the jury's verdict set aside and to have judgment entered in accordance with their previous motion for a directed verdict. As mentioned previously the court granted their motion, stating in its order that Greene had produced "no competent medical evidence" to prove that his loss of taste and smell was caused by the accident or that the loss of these senses was permanent.
The rules governing a posttrial motion for judgment in accordance with a previous motion for directed verdict are the same as those governing a motion for a directed verdict at the close of the evidence. *780 Hendricks v. Dailey, 208 So.2d 101 (Fla. 1968); Hall v. Ricardo, 331 So.2d 375 (Fla. 3d DCA 1976). A trial court is authorized to grant such a motion only if there is no evidence or reasonable inferences to support the nonmoving party's position. Stirling v. Sapp, 229 So.2d 850 (Fla. 1969); Brown v. Walker, 306 So.2d 209 (Fla. 1st DCA 1975); see H.I. Resorts, Inc. v. Touchton, 337 So.2d 854 (Fla. 2d DCA 1976).
One of the bases upon which the trial court set aside the jury's verdict was that it perceived that there was no evidence of proximate or legal causation.[3] Since we feel this issue is dispositive of the case, we proceed to it first.
It is rudimentary that a claimant must plead and prove that the negligent act of the person against whom he seeks a recovery was the cause of his injuries. Salinetro v. Nystrom, 341 So.2d 1059 (Fla. 3d DCA 1977); McWhorter v. Curby, 113 So.2d 566 (Fla. 2d DCA 1959); W. Prosser, The Law of Torts 236 (4th ed. 1971). Since Greene relied upon his loss of smell and taste to meet the nofault thresholds, it was incumbent upon him to prove that Mrs. Flewelling's negligence was the legal or proximate cause of his loss of these senses. See § 627.737(2), Fla. Stat. (Supp. 1976).
Greene first contends the trial court erred in holding that it was necessary for him to produce "competent medical evidence" of legal causation, because there is no legal requirement that medical evidence be produced on this issue. The general rule seems to be that it is necessary to demonstrate legal causation by expert testimony where this issue is beyond the common knowledge of laymen. W. Prosser, The Law of Torts 241 (4th ed. 1971); see, e.g., Biedenharn Candy Co. v. Moore, 184 Miss. 721, 186 So. 628 (1939); Parris v. Johnson, 3 Wash. App. 853, 479 P.2d 91 (1970). However, several recent Florida cases seem to indicate that expert testimony is not necessary to establish legal causation, even in instances where this issue is beyond the common knowledge of laymen. Hernandez v. Clinica Pasteur, Inc., 293 So.2d 747 (Fla. 3d DCA 1974); Alton Box Board Co. v. Pantya, 236 So.2d 452 (Fla. 1st DCA 1970). But even these cases do not obviate the claimant's burden of demonstrating legal causation by some competent evidence in order for him to recover for his injuries.
The trial court gave the following jury instruction on legal causation patterned on Fla.Std.Jury Instr. (Civ.) 5.1(a):
Negligence is a legal cause of loss, injury or damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such loss, injury or damage so that it can reasonably be said that, but for the negligence, the loss, injury or damage would not have occurred.
The standard jury instruction, of course, reflects the law of Florida on this subject. Sardell v. Malanio, 202 So.2d 746 (Fla. 1967); Broome v. Budget Rent-A-Car of Jax, Inc., 182 So.2d 26 (Fla. 1st DCA 1966); 23 Fla. Jur. Negligence §§ 26, 29 (1959). Viewing the evidence presented by Greene in light of the above standard we are compelled to agree with the trial court that Greene did not carry his burden of demonstrating that Mrs. Flewelling's negligence was the legal cause of his loss of smell and taste.
Greene offered no explanation of how his injuries affected his ability to smell or taste  he merely stated that he possessed these senses before the accident but did not shortly thereafter. Both Mrs. Greene and Dr. DeWeese verified that Greene had indeed said he could not smell shortly after the accident. The only other evidence going to the issue of causation was the following testimony from Dr. DeWeese:
Well, this is a very interesting case. This man [Greene] was in a car accident in which he sustained minor trauma to his head. When I say minor trauma, he was knocked unconscious; he was not comatose; he did not have any spinal fluid, *781 rhinorrhea, and his complaint afterwards is loss of smell. Well, to have a complaint of loss of smell implies the olfactory nerves have been transected or sheared in the trauma. This, without any other signs, say, of rhinorrhea, contusion or fracture of the base of the skull or severe facial fracture or any other coincident or corroborating injury, is unlikely. I can never remember a patient that transected the olfactory nerve or both olfactory nerves, which is what his complaint implies, that didn't have a severe injury to the brain or to the skull. I took the liberty to rule out a tumor. He didn't have it. So I really can't say on medical probability that he's transected his olfactory nerves. In fact, based on medical probability, I'd say he did not transect his olfactory nerves.
This testimony certainly does not support Greene's claim that he lost his ability to smell and taste as a result of the accident. In fact, the doctor's testimony militates against this conclusion. But even disregarding the doctor's testimony, Greene's evidence of causation boiled down to simply this: he could smell and taste before the accident, but could not shortly thereafter. We find that this evidence at best raises a mere possibility of legal causation, and nothing more. It has long been held that a possibility of causation is not sufficient to allow a claimant to recover. As said by Dean Prosser:
On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. (Emphasis added, footnotes omitted.)
W. Prosser, The Law of Torts 241 (4th ed. 1971). This is the law of Florida also. Tampa Electric Co. v. Jones, 138 Fla. 746, 190 So. 26 (1939); Bryant v. Jax Liquors, Inc., 352 So.2d 542 (Fla. 1st DCA 1977); Wirt v. Fontainbleau Hotel Corp., 306 So.2d 547 (Fla.3d DCA 1974).
Though legal causation must be judged on a case-by-case basis, two cases serve to illustrate the concept involved here. In Depfer v. Walker, 125 Fla. 189, 169 So. 660 (1936) the supreme court held that a plaintiff who merely showed that she sustained abdominal injuries in an automobile accident did not carry her burden of showing that her subsequent nervous condition and deafness were caused by the defendant's negligence. In Rutherford v. Modern Bakery, 310 S.W.2d 274 (Ky.App. 1958) the court held that plaintiff's evidence that he had become violently ill shortly after eating two pies from the defendant bakery was not sufficient to show that the bakery's negligence caused his injury. See also Eckley v. Seese, 382 Pa. 425, 115 A.2d 227 (1955); Kramer Service, Inc. v. Wilkins, 184 Miss. 483, 186 So. 625 (1939). In the instant case, as in Rutherford and Walker, the only evidence of legal causation was the proximity of Greene's loss of smell and taste to the accident. This is not enough  there must be some substantive link between the negligent act and the injury.
Greene also argues that the second basis upon which the trial court overturned the jury's verdict, i.e., that Greene did not adequately demonstrate by medical evidence that his loss of bodily function was permanent, was error. Since we have held that the court's first basis for overturning the verdict, i.e., that Greene did not prove legal causation, was correct, it is not necessary that we address this point. For the same reason, it is unnecessary that we address Greene's further argument that the court erred in refusing to give a jury instruction on a "serious, nonpermanent injury" as described in § 627.737(2)(e).
Accordingly, the order of the trial court setting aside the jury's verdict and entering *782 a judgment in favor of Greene for only his property damage is affirmed.
GRIMES, C.J., and DANAHY, J., concur.
NOTES
[1] In order for Greene to maintain his tort suit for personal injuries, § 627.737, Fla. Stat. (Supp. 1976) required him to prove at least one of the following:

(a) Loss of a body member.
(b) Permanent loss of a bodily function.
(c) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.
(d) Significant permanent scarring or disfigurement.
(e) A serious, nonpermanent injury which has a material degree of bearing on the injured person's ability to resume his normal activity and lifestyle during all or substantially all of the 90-day period after the occurrence of the injury, and the effects of which are medically or scientifically demonstrable at the end of such period.
(f) Death.
The trial court gave an instruction on "permanent loss of bodily function" as described in subsection (b), but refused to give an instruction on a "serious, nonpermanent injury" as described in subsection (e).
[2] The doctor testified that Greene had not mentioned anything to him about his loss of taste until the day of the deposition, only a week before trial.
[3] The standard jury instruction on this subject refers to "legal causation" rather than "proximate causation" because this latter term is often misunderstood by juries. Fla.Std.Jury Instr. (Civ.) 5.1 (comment 1); see also W. Prosser, The Law of Torts 236 (4th ed. 1971).