LEHAN, Judge.
Plaintiff mother appeals a directed verdict for defendant HRS on a claim against HRS for the wrongful disposal of plaintiff’s daughter’s body. Defendant cross-appeals the trial court’s denial of defendant’s motion for a directed verdict on plaintiff’s wrongful death claim. We affirm on plaintiff’s appeal and reverse on the cross-appeal.
Plaintiff’s baby daughter had a food intolerance that caused vomiting and diarrhea. Within the first several months of her life, the baby was hospitalized twice with dehydration resulting from this condition. After the second hospitalization, HRS was given custody of the baby and placed her with a foster mother. About four months later, after that foster mother became unable to care for the baby, the baby was placed with a different foster mother.
About one week before the placement with the second foster mother, the baby’s doctor recommended that the baby’s diet be changed by taking the child off of a carbohydrate-free formula, putting her back on a soybean formula which had been previously used, and gradually introducing her to solid foods. The second foster mother noticed that when she received custody of the child, the child had slight diarrhea and vomiting. For two days the symptoms gradually increased. When the symptoms substantially worsened on the third day, the foster mother called the HRS social coun-sellor assigned to the baby’s case, who instructed the foster mother to return the baby to the carbohydrate-free formula consistent with prior instructions of the doctor. The foster mother thought that the symptoms improved somewhat during the day. However, when the foster mother checked on the baby in the middle of the night, the baby seemed lifeless. An ambulance was called. The child was dead on arrival at the hospital.
After the child’s death, the HRS social counsellor tried, but was unable, to locate plaintiff regarding funeral arrangements. Plaintiff admitted that while she knew her baby had died in the custody of HRS, she did not contact HRS as to funeral arrangements. Plaintiff had changed residences frequently and had not given HRS plaintiff’s current address. The baby’s father and grandmother (plaintiff’s mother) asked that HRS handle the matter. No one at HRS informed plaintiff or her family that, if HRS handled the funeral, the child would be cremated. Plaintiff testified that she and her family did not believe in cremation, but there was no testimony that this was ever communicated to HRS.
We affirm the trial court’s directed verdict for HRS on the wrongful disposal claim. The record does not show wrongful or malicious indifference through HRS’s failure to tell plaintiff about the cremation. See Brooks v. South Broward Hospital District, 325 So.2d 479 (Fla. 4th DCA 1975); compare Kirksey v. Jernigan, 45 So.2d 188 (Fla.1950).
As to the issue raised on cross-appeal, we conclude that a verdict should have been directed for HRS on the wrongful death claim because plaintiff failed to offer any evidence that the alleged negligence of HRS was the legal cause of the baby’s death.
Plaintiff claimed that HRS was negligent in failing to fully inform the second foster mother about the baby’s prior medical history. The HRS counsellor testified that *1136 she told the foster mother how sick the child had been and that she had a food intolerance, had been in the hospital, and was doing much better. She told the foster mother the type of formula and food to give the baby and “what to watch out for.”
Whether or not HRS gave the foster mother full information, to recover under plaintiff’s theory, plaintiff, in order to meet a threshold issue, would have had to show that a person with full knowledge of the baby’s history would have sought and received medical help for the child at a point earlier in time than the foster mother did. See Greene v. Flewelling, 366 So.2d 777 (Fla.2d DCA 1978). If plaintiff had made that showing, there would then be another issue as to whether plaintiff must also show that medical help would, or could, have prevented the baby’s death or whether, in contrast, a showing that the lack of medical help lessened the baby’s chances of recovery would be sufficient. We need not address that other issue. We conclude that plaintiff failed to make the necessary showing under the foregoing threshold issue because there was no evidence that the symptoms of dehydration, about which it is argued the foster mother would have known if she had been given more information, appeared sufficiently in advance to provide the foster mother with an opportunity to receive medical help for the baby prior to the baby’s death.
Plaintiff’s evidence showed that the baby had typical symptoms of dehydration at her death, but there was no evidence as to how long those symptoms had existed. One of plaintiff’s witnesses, a doctor, testified that “the course of dehydration in a child can be very rapid, a matter of a few hours can be sufficient from seemingly well to death.” The baby’s death occurred in the middle of the night, and the foster mother testified that, prior to going to bed that night, there was nothing that indicated to her that the baby was in serious condition or needed a doctor. There was no evidence to the contrary.
Our reasoning that proximate cause was not established, despite the cogent arguments on behalf of plaintiff, may be summarized as follows. We need not decide whether there was a jury issue as to whether the foster mother looked at the baby often enough prior to the baby’s unfortunate , death or whether the foster mother had been given by HRS enough information so that she would have better known what symptoms to look for. There was no evidence that if the foster mother had looked at the baby prior to the death more often than she did and if she had better known what symptoms to look for, such as symptoms plaintiff’s doctor witness testified existed at the time of death, she would have seen those symptoms in sufficient time. The reason is that there was no evidence, even opinion testimony, that those symptoms existed sufficiently in advance of death to be perceivable in time for the foster mother to have acquired the services of a doctor before the death. The testimony of plaintiff’s doctor witness that the course of fatal dehydration can be very rapid and that “it can be a matter of a few hours from seemingly well to death” did not create a jury issue as to whether the symptoms existed sufficiently in advance of death to be perceivable in time to acquire the services of a doctor. The testimony only created a possibility of that. “[A] possibility of causation is not sufficient to allow a claimant to recover.” Greene v. Flewelling, supra, at 781.
We need not address the argument as to whether HRS was entitled to tort immunity for simple negligence under the in loco parentis doctrine and, if so, whether there was in this case evidence of more than simple negligence. Also, we need not address the arguments as to whether expert medical testimony is required to sustain plaintiff’s burden of proof in a case like this.
The judgment of the trial court for defendant HRS on the wrongful disposal of remains claim is affirmed. The order for a new trial on the wrongful death claim is reversed with directions to enter judgment for defendant.
*1137 REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT HEREWITH.
OTT, A.C.J., and DANAHY, J., concur.