460 So.2d 499 (1984)
Clara GANT, Individually and As Parent and Next Friend to Monica Gant, a Minor, Appellant,
v.
LUCY HO'S BAMBOO GARDEN, INC., d/b/a Lucy Ho's Restaurant, Appellee.
No. AY-356.
District Court of Appeal of Florida, First District.
December 11, 1984.
Donald M. Hinkle, of Green, Fonvielle & Hinkle, Tallahassee, for appellant.
*500 Michael T. Callahan, of Brooks, Callahan & Phillips, Tallahassee, for appellee.
ZEHMER, Judge.
Clara Gant and her eight-year-old daughter, Monica, sued Lucy Ho's Bamboo Garden, Inc., appellee, in a personal injury action, alleging that Lucy Ho's breached its implied warranty that the egg rolls furnished by it to Monica would be free from impurities likely to cause injury. Cliett v. Lauderdale Biltmore Corp., 39 So.2d 476 (Fla. 1949). Appellant claims the lower court erred in directing a verdict for appellee on the grounds (1) that the evidence was insufficient to support the cause of action, and (2) the evidence presented at trial was insufficient to support an award of $5,000 so as to bring the case within the jurisdictional limits of the circuit court. We reverse.
Discussing the second issue first, the complaint alleged that as a result of ingesting food contaminated with shigella, a bacterium which invades the intestinal tract, Monica suffered bodily injury which caused pain and discomfort, disability, mental anguish, loss of capacity for the enjoyment of life, and required medical care and treatment. The complaint alleged that Clara Gant incurred medical expenses on Monica's behalf and suffered loss of companionship and services of the minor child. It was also alleged that the damages claimed were permanent or continuing in nature and exceeded $5,000. In granting the directed verdict for lack of jurisdiction in the circuit court, the trial judge ruled that the evidence adduced at trial was not sufficient as a matter of law to support damages of $5,000. The trial court, however, explicitly declined to find that plaintiff's complaint was not filed in good faith.
It is well established that the test for determining this jurisdictional question is whether the amount put into controversy by the complaint is claimed in good faith. P.T.S. of Gainesville, Inc. v. Olivetti Corp. of America, 334 So.2d 324 (Fla. 1st DCA 1976). Even though the trial judge expressed his belief that he would have to overturn any award of damages for $5,000, he did not find  and we conclude the record would not support any finding  that the plaintiff was not acting in good faith in filing her complaint.
Regarding the sufficiency of the evidence issue, the trial court granted a directed verdict because the plaintiff had failed to prove that the egg rolls sold by appellee were contaminated and caused Monica's illness. The trial court apparently accepted appellee's argument that the only evidence of causation was the testimony of plaintiff's expert witness, Dr. Macaluso. Appellee argues that Dr. Macaluso's testimony that the egg rolls were the carrier of the shigella bacteria which caused Monica's illness was incompetent and insufficient to prove this essential element because it amounted to a conclusion or opinion based on facts and inferences not supported by evidence in the record.
The evidence, viewed most favorably to plaintiff, established the following circumstances. Monica went to Governor's Square Mall with her mother and sister on a Friday afternoon after school. Sometime between 4:30 p.m. and 6 p.m., Monica consumed an egg roll purchased from appellee's restaurant at Governor's Square. Her sister also purchased an egg roll but ate only half of it, and Monica ate the remainder. Monica ate no more food that evening. Around 11 p.m., Monica awoke with stomach cramps, severe diarrhea, and a fever which continued to Saturday. Her sister also became ill that evening with the same symptoms, but to a markedly lesser degree. By Saturday evening, Monica's condition had deteriorated so badly that her mother took her and her sister to the emergency room of the hospital. Monica's illness was diagnosed as caused by a bacterial organism, shigella sonnei, which attacks the intestinal tract. Monica had attended school that Friday and eaten lunch in the school cafeteria, but none of her classmates partaking of the school food became ill from food poisoning. Monica's mother purchased food at another restaurant in *501 the mall that evening and did not become ill.
The expert testimony established that shigella is usually transmitted from the fecal material of an infected person or carrier. It can be food-borne if food is handled by a carrier. It also can be directly transmitted as a result of exposure to a carrier or by "fecal hand-to-mouth" as the result of careless personal hygiene. Dr. Macaluso testified that the symptoms vary in severity with the amount of organism ingested and the weight, age, and general health of the patient. Based on the medical history revealed in the hospital records and as testified to by Monica and her mother, he characterized Monica's case as severe and opined that she had ingested a great deal of the organism. He further testified that a large dose is likely to come from food because the organism would reproduce in the food medium when kept at a temperature below that required to neutralize or kill the bacteria. The incubation period could vary from six to fifty hours, and a larger dose or amount of the organism is likely to cause a quicker and more severe onset of symptoms. Because Monica manifested severe symptoms so quickly, Dr. Macaluso opined, it was most probable that the last food she ate, the egg rolls, caused her illness. He conceded on cross-examination, however, that contraction of the illness from personal contact could cause as severe a case as from food-borne bacteria and that there was no way, based on the severity of the illness, to distinguish whether personal contact or food-borne bacteria had caused Monica's illness. He agreed that shigella bacteria could not live in food raised to 350° Fahrenheit.
The manager of appellee's restaurant located on Apalachee Parkway testified concerning the standard method of preparing egg rolls. The ingredients are chopped and wrapped by hand, and the completed roll is partially cooked in a deep-fat fryer at 350° for approximately five minutes. When necessary, the rolls are removed from a cooler and deep-fat fried for another three to four minutes. The egg rolls are then placed in a warmer which is supposed to be set at 140°. The rolls are served by using metal tongs. There was also evidence that the employee bathroom at appellee's restaurant had a posted sign cautioning employees to wash their hands. The sign was written in English, but many of the employees did not speak that language. The manager who testified was not present at the mall restaurant on the date here involved and did not directly supervise or have personal knowledge of the actual conditions and conduct of the employees on that date.
It is elementary that an appellate court, in reviewing the propriety of a directed verdict, must view the facts and inferences to be drawn therefrom in the light most favorable to the party against whom the judgment was granted. 2 Fla. Jur.2d, Appellate Review, § 326. A trial court is authorized to grant a directed verdict only if there is no evidence or reasonable inference from the evidence which will support the nonmoving party's position. Greene v. Flewelling, 366 So.2d 777 (Fla. 2d DCA 1979). In reviewing the sufficiency of the evidence, it must be remembered that "a mere possibility of causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." Id. at 781. But the court in Greene also points out that Florida courts have recognized that, even though the issue of causation is beyond the common knowledge of laymen, it is not always necessary to prove legal causation by expert testimony if other competent evidence demonstrates causation, citing Hernandez v. Clinica Pasteur, Inc., 293 So.2d 747 (Fla. 3d DCA 1974), and Alton Box Board Co. v. Pantya, 236 So.2d 452 (Fla. 1st DCA 1970). It has been held in a food poisoning case that although the only means of definitely ascertaining the precise cause of illness is to chemically analyze the food and plaintiff's stools, the failure to present such evidence does not leave the plaintiff's case legally insufficient in the presence of circumstancial evidence that some of the defendant's customers *502 consumed a shrimp salad alleged to have been deleterious while other customers in the group partook of different food and only those having ingested the shrimp salad became ill. Ogden v. Rosedale Inn, 189 So. 162 (La. App. 1939). In that case, the court stated:
The theory of plaintiff's case is that the shrimp salad which they ate at the defendant's restaurant was not fit for human consumption and that it is the direct cause of their illness. They have attempted to establish this as a fact by the process of elimination, exhibiting that, of the six people partaking of lunch at the defendant's restaurant, only four of them (the plaintiffs) ate shrimp salad and that they are the ones who suffered from food poisoning.
Dr. La Bruyere, Mrs. Ogden's physician, states that it is his belief that his patient was affected with food poisoning and that, according to the history of the case, it is very probable that the shrimp salad she ate was the direct cause of her illness. Plaintiffs further show that all of them, with the exception of Mr. Berthelot and Mrs. Hanlon, ate different food on the evening after their visit to the defendant's restaurant and they point to this fact as a circumstance tending to prove that the shrimp salad is the underlying cause of their ailment.
* * * * * *
While we agree with counsel that the plaintiffs had the burden of establishing that they were poisoned as a result of eating shrimp salad at the defendant's restaurant, we think that the evidence is sufficient to authorize the finding that their ailments are attributable to the shrimp salad and that the food served to them by the defendant was deleterious. The proof in the record clearly demonstrates that the plaintiffs were afflicted with food poisoning. All of them suffered with nausea, vomiting spells and diarrhea. These symptoms plainly indicate the presence of bacteria in the intestines. Moreover, it is very probable that the shrimp salad was the underlying cause of plaintiffs' illness. It is shown that all of them became sick about the same time and that the two other persons with them who did not eat shrimp were not affected.
Counsel for defendant seems to be of the belief that it was necessary for plaintiffs to prove beyond all doubt that the shrimp salad was the underlying cause of their illness and that it was encumbent upon them to have had a chemical analysis taken either of the food or of their stools in order that it might be positively established that the shrimp were unfit for human consumption. Counsel is mistaken. The law does not require exact proof, but only that the claim be shown with reasonable certainty.
189 So.2d at 163-64.
Similarly, we hold that the evidence in this case was sufficient to make a jury issue on whether the appellee's egg rolls consumed by Monica were the cause of her illness. There was no showing that lack of proper personal hygiene practices by Monica likely caused her ingestion of the bacteria. The expert testimony, together with the circumstances that Monica, after eating three times the quantity of egg rolls as did her sister, became seriously ill and her sister also became ill, but to a notably lesser degree, while the mother ate entirely different food and did not become ill at all, supports reasonable inferences that the egg rolls  the single common factor to which both Monica and her sister were exposed  were the most probable carrier of the shigella bacteria which caused Monica's illness.
The testimony of appellee's manager concerning the usual procedure for cooking the food at a temperature of 350° and storing it at a temperature of 140° cannot be said as a matter of law to irrefutably negate the probability that the egg rolls were the carrier of the shigella bacteria. He was not present to supervise food preparation on the day in question and could only testify to the usual or customary practice. The jury was free to accept or reject his testimony as refuting the plaintiff's claim.
*503 Accordingly, the judgment is reversed and the case is remanded for a new trial.
ERVIN, C.J., concurs.
MILLS, J., concurs in part and dissents in part.
MILLS, Judge, concurring in part and dissenting in part:
I concur in part and dissent in part.
I agree with the majority that the trial court erred in directing a verdict for Lucy Ho for lack of jurisdiction and I would reverse on this issue.
I disagree with the majority that the trial court erred in directing a verdict for Lucy Ho because the evidence was insufficient to prove that the egg rolls were contaminated and I would affirm on this issue.
The unrefuted evidence is that the egg rolls were fried at 350 degrees which killed the bacteria and then kept at 140 degrees at which the bacteria could not live. Causation was not shown. A directed verdict is proper where evidence or an essential element is lacking. Georgia-Pacific Corporation v. Squires Development, 387 So.2d 986 (Fla. 4th DCA 1980).
Dr. Macaluso's opinion was based on his presumption that Monica's illness was caused by the last ingested food. His opinion was merely a conclusion inferred from a fact not supported by the evidence. It was pure speculation to conclude that the eggroll caused the illness. The Gants did not contradict Lucy Ho's evidence that the 350 degree cooking would have killed the bacteria. Nothing implicates the eggroll except that it was the last thing eaten. There was no evidence on which the jury could have found for the Gants. Arkin Construction Company v. Simpkins, 99 So.2d 557 (Fla. 1957), establishes that "the conclusion or opinion of an expert witness based on facts or inferences not supported by the evidence in a cause has no evidential value... . The opinion of the expert cannot constitute proof of the existence of the facts necessary to the support of the opinion."
Dr. Macaluso based his conclusion that Lucy Ho's eggroll caused Monica's illness on his inference from the severity of the illness and its rapid onset that the illness was food borne. Nothing in the record supports a food borne illness over one contracted by personal contact or self-infliction. In fact, the expert testified that the latter type could be just as severe. As the court said in Greene v. Flewelling, 366 So.2d 777 (Fla. 2d DCA 1978):
A mere possibility of causation is not enough, and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
The 1939 Louisiana case is not applicable to the facts of this case because it did not have unrefuted evidence as this case does that the food was fried at a temperature that killed the bacteria and kept at a temperature at which the bacteria could not live.