## LOPEZ, etc., et al. v FLORIDA POWER & LIGHT COMPANY, et al.

Case No. 83-1742 (22)

Eleventh Judicial Circuit, Dade County

December 19, 1985

### APPEARANCES OF COUNSEL

Adolfo Del Castillo, P.A., Roderick Knott, Edward A. Perse, Horton, Perse, P.A. & Ginsberg, Emilio C. Caballero, P.A., for plaintiff Marta Lopez.

Norman A. Coll and Samuel J. Dubbin, Steel Hector & Davis, for defendant Florida Power & Light Company.

Mitchell L. Lundeen, George, Hartz & Lundeen, for defendant Asplundh Tree Expert Company.

### OPINION OF THE COURT

ROBERT P. KAYE, Circuit Judge.

*ORDER SETTING ASIDE VERDICT, ENTERING FINAL JUDGMENT FOR DEFENDANTS IN ACCORDANCE WITH MOTIONS FOR DIRECTED VERDICT, AND IN THE ALTERNATIVE, GRANTING REMITTITUR AND NEW TRIAL*

This cause came on before the Court on November 25, 1985 on the

"Motion to Set Aside Verdict and for Judgment in Accordance with Motion for Directed Verdict," the "Motion for Remittitur or, in the Alternative, for a New Trial," and the "Motion for a New Trial" filed by the Defendants, Florida Power & Light Company (FPL) and Asplundh Tree Expert Company (Asplundh). The Court has considered the memoranda submitted by all parties, a transcript of the trial which has been filed with the Court, and has heard argument of counsel for each of the respective parties. Based upon the foregoing, the Court makes the following findings and conclusions upon the following grounds:

1. In this wrongful death action, Plaintiff's decedent, Lucio Pablo Lopez, was electrocuted August 29, 1982 when he contacted an overhead electrical power line with a metal fruit picker pole while picking avocados from a tree in his own back yard in a residential neighborhood in Miami, Dade County, Florida.

2. During the course of the trial, both Defendants moved for a directed verdict at the close of Plaintiff's case and at the close of all of the evidence. The Court reserved ruling on such motions at the close of all of the evidence and submitted the case to the jury.

3. On August 16, 1985, the jury returned a verdict for Plaintiff and against Defendants, which found that Plaintiff's decedent was 43% negligent, FPL was 30% negligent, and Asplundh was 27% negligent, and awarded damages to Plaintiff, unreduced, of $400,000 to the Estate and $1.1 million to Plaintiff, as surviving widow.

4. In order to establish negligence, Plaintiff was required to prove the existence of a duty owed by the Defendants to protect Plaintiff's decedent, a breach of that duty by the Defendants, and injury sustained as a proximate cause of the breach. *Clark v. Boeing Co.*, 395 So.2d 1226, 1228 (Fla. 3rd DCA 1981).

5. In this case, Plaintiff claimed in her pleadings that FPL had a duty to trim the Lopez avocado tree so that the branches did not touch the overhead electrical power lines, and a duty to warn Mr. Lopez of the danger in contacting, or of the tree coming in contact with, the lines. Plaintiff also claimed in her pleadings that FPL breached those duties by failing to trim the tree sufficiently and failing to warn, and that such breaches were the proximate cause of the death of Mr. Lopez. Plaintiff also claimed that Asplundh, FPL's tree-triming contractor, failed to trim the tree sufficiently, which was the proximate cause of the death of Mr. Lopez.

6. In ruling on Defendants' Motion for Judgment in Accordance

**99**

with Motion for Directed Verdict, the Court has viewed the evidence adduced and every conclusion inferable therefrom in a light most favorable to Plaintiff, and has resolved every conflict and inference in favor of Plaintiff. *Ligman v. Tardiff*, 466 So.2d 1125, 1126 (Fla. 3rd DCA 1985); *Levine v. Frank*, 311 So.2d 708, 710 (Fla. 3rd DCA 1975), *cert. denied* 327 So.2d 33 (Fla. 1976). However, Plaintiff failed to prove the allegations in her pleadings, and there was no competent evidence adduced at trial for the jury lawfully or reasonably to find any negligence on the part of FPL or Asplundh which was a legal cause of the death of Plaintiff's decedent.

7. There was no competent evidence that FPL or Asplundh breached any duty to trim the tree. Evidence at trial indicated, without contradiction, that FPL has a regular grid tree-trimming program, and that the area in which the Lopez tree was located was routinely trimmed by Asplundh for FPL as part of this program in April of 1982, four months prior to the accident on August 29, 1982. Plaintiff testified that the tree was trimmed by FPL or its contractor in April of 1982.

8. There was no testimony or evidence that any of the limbs and branches of the Lopez tree were touching the overhead electrical wires at any time prior to the accident. Plaintiff testified that on the day of the accident she did not see any limbs or branches touching the wire prior to the accident.

9. After the accident, the metal pole picker, with a three-pound avocado still in the net, was found with the bottom end of the pole lodged in the crotch of the tree, and the end with the net in contact with the energized power line, which caused the power line to be displaced downward and toward the branches of the tree. Photographs taken of the pole in this position were introduced into evidence. Several witnesses who viewed the tree after the accident, while the metal pole picker was still lodged in the crotch of the tree and in contact with the overhead wire, or who observed the photographs of this condition, testified about the proximity of the branches of the tree to the wire at this time. However, such testimony is not probative of the proximity of the branches of the tree to the wire prior to the accident, and it does not create an issue for the jury. *Watley v. Florida Power & Light Co.*, 192 So.2d 27, 30 (Fla. 1st DCA 1966).

10. After the metal pole picker had been removed from the tree on the date of the accident, two FPL employees, Jack Craig and Manny Dulle, observed the tree. Both testified that at that time there was 3 to 5 feet of clearance between the branches and the wire, and no need for tree trimming. The following day, Assistant Medical Examiner Dr.

Valerie Rao went to the scene. She testified that none of the limbs or branches of the tree were in contact with the overhead power lines on that date. Plaintiff's daughter, Nilda Diaz, went to the scene two days after the accident. She testified that none of the limbs or branches of the tree were in contact with the overhead power lines on that date.

11. C. Otis Grannis, an electrical engineer employed by FPL to investigate the accident, also went to the scene two days after the accident. He determined that there was 3 to 5 feet of clearance between the limbs and branches of the tree and the overhead electrical wire, and determined that there was no violation of any applicable code, regulation, or standard, and no need for tree trimming.

12. Dr. Agustin Recio, an electrical engineer employed by Plaintiff to investigate and analyze the accident, went to the scene on two occasions within two months after the accident. He determined that on each of those occasions there was 3 to 5 feet of clearance between the limbs and branches of the tree and the overhead electrical wire. Dr. Recio assumed that the tree had been trimmed since the date of the accident, but no evidence in the record supports such speculation. The uncontradicted evidence is to the contrary. Mr. Craig, Mr. Dulle, and Mr. Grannis determined that no tree trimming was necessary after the accident; FPL researched its records after the lawsuit was filed and found no record of any tree trimming at the Lopez residence within six months of the date of the accident; and Plaintiff, herself, testified that the tree was not trimmed after the accident in August of 1982 until at least April of 1983.

13. Plaintiff also testified that her husband had been up in the tree for 10-15 minutes and picked two avocados without incident prior to picking the third avocado. After the accident, when the pole was removed from the wire and the crotch of the tree and the line was reenergized, an FPL crewman climbed into the tree without incident.

14. Plaintiff's expert, Dr. Recio, testified that in his expert opinion, if on the date of the accident the tree did not contact the wire, there was no violation of any applicable code or standard. He also testified that the 3 to 5 feet of clearance he observed on two occasions two months after the accident violated no applicable code, regulation, or standard, including FPL's own internal standard.

15. Based upon Dr. Recio's testimony, together with all other competent testimony, it is uncontradicted that the tree had in fact been trimmed four months prior to the accident, there was no contact between the tree and the overhead electrical wire prior to the accident on the date of the accident, the clearances at the time of the accident

**101**

were 3 to 5 feet, and such clearances were adequate and not in violation of any applicable code, regulation or standard.

16. Consequently, Plaintiff failed to prove by competent evidence that FPL or Asplundh had breached any duty owed to Plaintiff to trim the tree.

17. In addition, there was no competent evidence that FPL breached any duty to warn. FPL introduced evidence of its safety advertising program in newspapers and on television, in English and Spanish, throughout Dade County which warned of the dangers of flying kites, installing antennas, tree climbing, and picking and pruning trees in close proximity to overhead electrical power lines. Schedules introduced into evidence by FPL showed the frequency with which the ads were run during 1981 and 1982 in Dade County, and the testimony was that similar ads ran at similar times in prior years. The evidence showed that Spanish language safety advertisements were run by FPL in *Diario de Las Americas*, and on Channel 23 during 1981 and 1982 in Dade County, and that Mr. Lopez read the newspaper *Diario de Las Americas* and watched Channel 23. FPL also proved that it mailed bill stuffers in English and Spanish to each of its customers, and that one of those each year was devoted to safety warnings. The bilingual bill stuffers, each containing multiple safety warnings, including kite flying, installation of antennas, tree climbing, and picking and pruning, for December 1981 and September 1982, were introduced into evidence. Mrs. Lopez testified that Mr. Lopez personally handled and paid all of the household bills.

18. Plaintiff failed to prove by competent evidence that FPL had failed to warn Mr. Lopez of the danger or that he had not read or heard any of the warnings.

19. Plaintiff also failed to prove by competent evidence that the alleged breach of duty by FPL or Asplundh, if any, with respect to tree trimming, was the proximate cause of the death of Plaintiff's decedent. Plaintiff's expert testified that he could not determine how the accident occurred. Based upon an assumption that the photographs taken after the accident with the pole lodged in the crotch of the tree and in contact with the wire depicted the proximity of the branches to the overhead wire prior to the accident, Dr. Recio testified that either: (1) Mr. Lopez inadvertently brought his pole in contact with the overhead wire; or (2) contact between the overhead wire and some part of the tree energized the tree, shocked Mr. Lopez, and caused him to lose control and thrust the pole into the wire; or (3) Mr. Lopez pulled the tree branches into the wire, which energized the tree and caused him to

102

lose control. As noted above, the competent evidence in the record only supports the conclusion that Mr. Lopez brought his pole in contact with the overhead wire. The opinion testimony by this witness concerning the other alternative is based upon assumptions which are unsupported by competent evidence and proven by physical facts to be false. Consequently, the opinion testimony of Dr. Recio concerning the other alternative accident causes is "pure speculation and conjecture", which requires a directed verdict for Defendants. *Gooding v. Universal Hospital Building, Inc.,* 445 So.2d 1015, 1018 (Fla. 1984). ("A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant".) There was no evidence that "but for" the alleged failure to trim the tree back further, the accident would not have occurred. Under these circumstances a directed verdict is required for FPL and Asplundh as a matter of law. *Gooding,* 445 So.2d at 1018; *Meyer v. Torrey,* 452 So.2d 672 (Fla. 2d DCA 1984); *Stahl v. Metropolitan Dade County,* 438 So.2d 14 (Fla. 3rd DCA 1983); *Greene v. Flewelling,* 366 So.2d 777 (Fla. 2d DCA 1978).

20. Plaintiff also failed to prove by competent evidence that the alleged failure, if any, on the part of FPL to warn was a legal proximate cause of the death of Plaintiff's decedent. There was no proof that Mr. Lopez was not aware of the danger, or that if he had received a warning that he would not have climbed the tree, or used a long metal pole to harvest avocados. There was no proof that "but for" the alleged failure to warn, the accident would not have occurred. Under these circumstances, a directed verdict is required for FPL and Asplundh as a matter of law. *Gooding v. University Hospital Building, Inc.,* 445 So.2d 1015, 1018 (Fla. 1984); *Meyer v. Torrey,* 452 So.2d 672 (Fla. 2d DCA 1984); *Stahl v. Metropolitan Dade County,* 438 So.2d 14 (Fla. 3rd DCA 1983); *Greene v. Flewelling,* 366 So.2d 777 (Fla. 2d DCA 1978). *See also Richmond v. Florida Power & Light Co.,* 58 So.2d 687 (Fla. 1952).

21. Based upon the competent testimony and evidence adduced at trial, the only conclusion that could reasonably be reached is that the sole proximate cause of the death of Plaintiff's decedent was his own negligence and failure to exercise care for his own safety. The evidence showed that Mr. Lopez climbed approximately 16 feet into the avocado tree, with a home-made metal pole picker approximately 16 feet long. The overhead electrical power lines located adjacent to the tree in the utility easement were visible from the ground in the area of the tree. Mrs. Lopez testified that Mr. Lopez successfully picked two avocados

and lowered them to her in the net. In doing so, he specifically lowered his pole picker toward the house, and away from the easement where the power lines were located. According to the only eyewitness testimony, when Mr. Lopez had secured a third avocado which weighed 3 pounds in the net on the end of the pole picker, the pole suddenly began swaying side to side, 2 to 3 feet, and then Mr. Lopez lost control of the pole. The evidence is undisputed that the pole then came in contact with the overhead energized power line, resulting in a fatal electrical shock to Mr. Lopez.

22. As noted above, Defendants have moved, in the alternative, for remittitur of the $400,000 awarded to the Estate as loss of net accumulations, and for a new trial on liability and damages. All parties agree that it is appropriate for the Court to rule, in the alternative, on these motions at this time in the interest of judicial efficiency. *Ligman v. Tardiff*, 466 So.2d 1125 (Fla. 3rd DCA 1985).

23. At the November 25, 1985 hearing, counsel for the Plaintiff stipulated that on this record, a remittitur of the $400,000 award for loss of net accumulations to $0.00 was appropriate.* The Court agrees that a remittitur is required because the verdict for the Estate in the amount of $400,000 is erroneous, unsupported by any competent evidence and is against the manifest weight of the evidence. *Air Florida v. Hobbs*, 10 FLW 2398 (Fla. 3rd DCA 1985) (revised opinion); *Nowicki v. School Board of Broward County*, 400 So.2d 199 (Fla. 4th DCA 1981).

24. Testimony at trial reflected that as of the date of his death, on August 29, 1982, Plaintiff's decedent was earning approximately $800 gross and $500 net every two weeks. Plaintiff testified that Mr. Lopez intended to retire in 2 years. His life expectancy was approximately 11 years. There was no evidence of his personal expenses, or expenses for the support of his surviving spouse. There was no evidence of any debts he had accumulated. There was no evidence that Mr. Lopez had been able or would have been able to save any amount. There is absolutely no basis in the record for the jury's award of $400,000 to the Estate as damages for loss of "net accumulations." *Air Florida v. Hobbs*, 10 FLW 2398 (Fla. 3rd DCA 1984) (revised opinion); *Nowicki v. School Board of Broward County*, 400 So.2d 199 (Fla. 4th DCA 1981); *Ellis v. Golconda Corp.*, 352 So.2d 1221 (Fla. 1st DCA 1977), *cert. denied*, 365 So.2d 714 (Fla. 1978); *Seaboard Coast Line Railroad Corp. v. Robinson*, 263 So.2d 626 (Fla. 2d DCA 1972).

* Counsel's stipulation was made on the condition that the Plaintiff not be precluded from attempting to introduce additional competent evidence on this point if there is a retrial.

25. In addition, a new trial on both liability and damages is warranted if the order setting aside the jury verdict and entering Final Judgment for the Defendants in accordance with the motion for directed verdict is reversed on appeal.

26. It is evident, from the discussion above, that the jury's award of $400,000 to the Estate of Lucio Pablo Lopez is not supportable on any interpretation of the testimony and evidence before the Court. By examination of the standard on which the jury was charged concerning "net accumulations," that portion of the verdict is erroneous, so excessive as to shock the conscience of the Court, and requires a new trial. *Robinson v. Allstate Insurance Co.*, 367 So.2d 708 (Fla. 3rd DCA 1979).

27. The undisputed error in the award to the Estate for loss of net accumulations compels the conclusion that the award to the widow of $1.1 million is also erroneous, unsupported by evidence in the record, against the manifest weight of the evidence, and so excessive as to shock the conscience of the Court. The amount of damages awarded to the widow is not supportable on any interpretation of the testimony and evidence before the Court. *Air Florida, Inc. v. Hobbs*, 10 FLW 2398 (Fla. 3rd DCA Oct. 22, 1985) (revised opinion). These errors warrant a new trial on both liability and damages. *Staib v. Ferrari, Inc.*, 391 So.2d 295 (Fla. 3rd DCA 1980); *Robinson v. Allstate Ins. Co.*, 367 So.2d 708 (Fla. 3rd DCA 1979); *Nowicki v. School Board of Broward County*, 400 So.2d 199 (Fla. 4th DCA 1981).

28. Independently of the effect of the erroneous $400,000 award to the Estate, the $1.1 million award to the widow is contrary to the manifest weight of the evidence and requires a new trial for the reasons set forth in this Court's decision above granting the Defendants' Motion for Judgment in Accordance with Motion for Directed Verdict. (See Paragraphs 4-21 above.) As found above, there was no evidence presented on which the jury could lawfully return a verdict for the Plaintiff. *Ford v. Robinson*, 403 So.2d 1379 (Fla. 4th DCA 1981). The verdict is also against the manifest weight of the evidence, and shocks the conscience of the Court. The excessive $1.1 million verdict was clearly influenced by the jury's passions and sympathy for the widow. Under such circumstances, it is the duty of the Court to grant a new trial. *Crawford v. Hinson*, 108 Fla. 630, 146 So. 829 (1933).

29. The Court has specifically considered and rejected the Defendants' assertions in their respective Motions for New Trial that a new trial is required because of improper remarks by the Plaintiff's counsel in closing argument.

105

Based on the foregoing, it is

ORDERED AND ADJUDGED:

1. The Motions to Set Aside Verdict and for Judgment in Accordance with Motion for Directed Verdict filed by Defendants FPL and Asplundh are granted. The jury verdict rendered in this cause August 16, 1985 is vacated and set aside and Final Judgment is entered for Defendants.

2. Plaintiff shall take nothing by this action and Defendants FPL and Asplundh shall go hence without day, with costs to be taxed upon further appropriate Motion(s) and Order(s) of Court.

In the alternative, in accordance with *Ligman v. Tardiff*, 466 So.2d 1125 (Fla. 3rd DCA 1985), (Paragraph 22 above), it is further

ORDERED AND ADJUDGED:

3. The Motions for Remittitur of Defendants are granted and the jury award of $400,000 to the Estate of Lucio Pablo Lopez for loss of net accumulations is remitted to $0.00; and

4. The Motions for New Trial of Defendants are granted and Defendants shall have a new trial on the issues of liability and damages.