753 So.2d 138 (2000)
Suzanne E. CLARK, as Personal Representative of the Estate of Jane Hargraves, Deceased, Appellant,
v.
POLK COUNTY, a subdivision of Florida; Ronald E. Hargraves; and Springer Motor Co., Inc., a Florida corporation, Appellees.
No. 2D97-4798.
District Court of Appeal of Florida, Second District.
February 9, 2000.
Rehearing Denied March 8, 2000.
*139 John W. Frost, II, and Mark A. Sessums of Frost, O'Toole & Saunders, P.A., Bartow, for Appellant.
Hank B. Campbell and Christine C. Daly of Lane, Trohn, Bertrand & Vreeland, P.A., Lakeland, for Appellee Polk County.
Sylvia A. Grunor of Calvin, Grunor & Finch, P.A., Orlando, for Appellees Hargraves and Springer Motor Co.
NORTHCUTT, Judge.
The estate of Jane Hargraves filed a wrongful death action following her demise in an intersection collision. In this appeal the estate challenges defense judgments based variously on a directed verdict in favor of Polk County and on jury verdicts in favor of Ronald Hargraves and Springer Motor Company. We affirm the judgment in favor of Mr. Hargraves and Springer Motor Company. We conclude the trial court should not have directed a verdict for Polk County, and we reverse the judgment in its favor. In addition, because we remand this case for retrial, we have examined the trial court's determination that the jury would be instructed to apportion Polk County's fault with that of an unknown tortfeasor. We hold the evidence was insufficient to support the ruling.
Early one morning in November 1993, Mrs. Hargraves was a passenger in a rental car driven by her husband, Ronald Hargraves. They traveled south on Power Line Road in Polk County. As their vehicle passed through the intersection of Power Line Road and County Road 580, it was broadsided from the right by an eastbound bread truck. Mrs. Hargraves suffered fatal injuries in the collision.
The personal representative of Mrs. Hargraves's estate, Suzanne Clark, filed a negligence suit against Polk County, Mr. Hargraves, Springer Motor Company, which owned the rental car, and Lawrence Mercer and Interstate Brands Corporation, respectively the driver and the owner of the bread truck. Mercer and Interstate Brands settled with the estate and are not parties to this appeal.
At trial the estate introduced evidence that on the evening prior to the accident, a passerby who lived near the intersection noticed that the stop sign controlling the southbound lane of Power Line Road was missing. The man testified that he reported this by calling Polk County on the 911 emergency line. The stop sign had not been restored when Mr. and Mrs. Hargraves ventured through the intersection roughly 12 to 14 hours later. An accident investigator later discovered tire tracks over the spot where the stop sign had stood, and he observed that its post had been sheared near the ground.
This intersection was known to be very dangerous. In addition to the stop sign that was usually present, the southbound lane of Power Line Road contained other devices meant to warn approaching motorists of the hazardous crossroads. These included eight sets of rumble strips which began 743 feet north of the intersection and a "stop ahead" sign positioned 385 feet north of the intersection. Also, a double *140 yellow line was painted down the center of Power Line Road beginning some distance to the intersection's north.
Although Mr. Hargraves survived the accident, he had no memory of it. He was unable to say whether he appreciated or heeded the other warning devices. A motorist who was approaching the intersection from the south testified that she observed the Hargraves vehicle as it entered the intersection, and that it did not slow down. The Florida Highway Patrolman who investigated the accident found no skid marks or other indications that either vehicle swerved or braked to avoid the collision.
The estate's accident reconstruction expert attributed the accident to the absence of the stop sign. He testified that the speed limit for the bread truck was 45 miles per hour, and that it was traveling approximately 50 to 55 miles per hour at the time of the collision. The speed limit for the Hargraves vehicle was 50 miles per hour, and its speed was 40 to 50 miles per hour. The expert noted that there were trees on the northwest corner of the intersection, restricting the drivers' respective fields of view. The earliest moment that the drivers could have seen each other was two seconds before the impact, and the normal human reaction time was 1.5 seconds. Therefore, according to the expert, even assuming that either driver had seen the other vehicle at the earliest opportunity, he would have had only half a second to attempt to avoid the collision.
At the close of the estate's case, Polk County obtained a directed verdict based on its assertion that, especially given Mr. Hargraves's failure to heed the other warning devices, it could not be proved that the absence of the stop sign proximately caused the accident. At the same time, the trial court denied the estate's motion for a directed verdict on the issue of Mr. Hargraves's liability and, vicariously, that of Springer Motor. The cases against those defendants were submitted to the jury, which found no liability on the part of either.
We hold that Polk County was not entitled to a directed verdict. The question of proximate causation ordinarily must be resolved by the trier of fact from all the facts and circumstances in a particular case. See Florida Power & Light Co. v. Periera, 705 So.2d 1359 (Fla.1998). Nevertheless, the County argues in part that it could not be foreseen that a driver would fail to see the intersection even in the absence of a stop sign. The issue of foreseeability as it relates to proximate causation may be decided as a matter of law only if, after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that the conduct should have brought about the harm. See McCain v. Florida Power Corp., 593 So.2d 500, 504 (Fla.1992) (quoting Restatement (Second) of Torts, § 435(2)(1965)). The issue may be decided by the court only where no reasonable person could differ in concluding the accident was unforeseeable. See Springtree Properties, Inc. v. Hammond, 692 So.2d 164, 167 (Fla.1997).
In this regard the County relies heavily on Derrer v. Georgia Electric Co., 537 So.2d 593 (Fla. 3d DCA 1988), which involved a collision in an intersection at which the traffic light was inoperable. There, the trial court granted the defendant electric company a judgment notwithstanding the verdict. The Third District affirmed, reasoning that in the range of ordinary human experience an inoperable traffic light does not cause automobile drivers to miss seeing the entire intersection where the light is located. Thus, the court concluded that the accident was not a foreseeable consequence of the electric company's negligence. Id. at 594.
In terms of foreseeability, however, there is a significant difference between Derrer and this case. The presence of a traffic signal, even if it is inoperable, alerts the driver that he is approaching a controlled intersection, whereas a downed *141 stop sign conveys no information whatever. Although it may not be foreseeable that a driver approaching a dark traffic light would proceed into the intersection with no or little heed, it is foreseeable that a motorist would proceed in the complete absence of any control device instructing him to do otherwise. Indeed, in Derrer the Third District neither mentioned nor receded from its earlier decision in Armas v. Metropolitan Dade County, 429 So.2d 59, 61 (Fla. 3d DCA 1983), an obstructed stop sign case in which the court "reject[ed] the claim that, as a matter of law, an inoperative or invisible traffic control device cannot be a legal cause of a resulting intersection collision." See also Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla.1979) (consolidated intersection collision cases, one involving downed stop sign and other involving inoperable traffic light); Metropolitan Dade County v. Yearby, 580 So.2d 186 (Fla. 3d DCA 1991) (involving collision in intersection at which stop sign had been knocked down). Because it is easily foreseeable that a motorist would proceed through a seemingly uncontrolled intersection, Mr. Hargraves's negligence in doing so, if any, could not be deemed to have severed the causative link between the County's alleged negligence and the accident. See Palm Beach County Bd. of County Comm'rs v. Salas, 511 So.2d 544 (Fla.1987); Cahill v. City of Daytona Beach, 577 So.2d 715 (Fla. 5th DCA 1991).
The County also contends that because Mr. Hargraves was inattentive to the other warning devices, a jury could only speculate that he would have stopped even if the stop sign had been standing. Thus, the County argues, it cannot be said that "but for" the felled stop sign this accident would not have happened. It cites Greene v. Flewelling, 366 So.2d 777, 781 (Fla. 2d DCA 1978), for the proposition that proof of proximate causation requires some substantive link between the negligent act and the injury, and that a mere possibility of causation is not sufficient to allow a claimant to recover.
We note, first, that Greene presented a very different kind of circumstance. It involved the plaintiffs attempt to recover for losing his senses of smell and taste following an automobile accident. The only circumstance by which this condition could be related to the accident was that the plaintiff possessed both senses before the accident and lost them shortly thereafter. His own treating physician could not relate the condition to the physical injuries the plaintiff was known to have suffered in the accident. This court held that the evidence merely raised a possibility that the accident caused the condition, and that such was insufficient to establish proximate causation. Clearly, in Greene a finding of proximate causation necessarily would have been a matter of pure speculation. But, as we have pointed out, a jury easily could find that a motorist would proceed through an intersection because it is not marked by a visible stop sign. See, e.g., Yearby; Armas; Dickerson, Inc. v. Buckley, 261 So.2d 570 (Fla. 4th DCA 1972).
Beyond that, the evidence in this case did not prove that Mr. Hargraves paid no heed to the other warning devices. To be sure, the motorist who witnessed the accident from the south side of the intersection recounted that Mr. Hargraves did not slow down as he entered it. But she did not, and could not, testify that Mr. Hargraves never slowed after encountering the warning devices that began over 740 feet north of the intersection. Moreover, the estate presented evidence, including photographs from the vantage of a southbound motorist's approach to the intersection, from which the jury could have concluded that the preceding warning devices did not adequately alert Mr. Hargraves that he was entering the intersection to which those warnings referred. Under the circumstances of this case, the question whether the stop sign's absence proximately caused the accident was for the jury.
*142 For those same reasons, we reject the estate's arguments that it was entitled to a directed verdict on the issue of Mr. Hargraves's and Springer Motor's liability, and that the jury verdicts in favor of those defendants were against the manifest weight of the evidence.
The last issue involves the trial court's determination that an unknown tortfeasor should be included on the verdict form pursuant to section 768.81, Florida Statutes (1995), and Fabre v. Marin, 623 So.2d 1182 (Fla.1993). This ruling was elicited early in the trial at the behest of Polk County, which contended that its fault, if any, should be apportioned with that of the unknown person who knocked down the stop sign. The court based its decision on the presence of the tire tracks over the spot where the sign post had been sheared. The issue later was mooted by the directed verdict in Polk County's favor, but it is resurrected by our decision today.
A defendant seeking to have the jury apportion its fault with that of a nonparty has the burden to plead and prove its entitlement to that benefit. See Nash v. Wells Fargo Guard Services, Inc., 678 So.2d 1262 (Fla.1996); E.H.P. Corp. v. Cousin, 654 So.2d 976 (Fla. 2d DCA 1995). The estate argues that Polk County failed to carry its burden, in part because the County did not establish the identity of the non-party tortfeasor. The County contends that it sufficed to show that some specific person had acted in a specific way to contribute to the accident, even if that person could not be named.
At first blush, this would appear to be a simple question. Addressing the defendant's burden of pleading and proof in order to have noneconomic damages apportioned against a third party, the Nash court held that the defendant must plead the nonparty's negligence as an affirmative defense "and specifically identify the nonparty." 678 So.2d at 1264. Although it is not clear, in Thomas v. Daniel, 736 So.2d 100 (Fla. 1st DCA 1999), the First District apparently ascribed to the quoted phrase the meaning espoused by the estate in this case. In Thomas the plaintiff was a passenger in a truck driven by the defendant. He was injured when the defendant lost control of the truck after striking a large rock in the road. The defendant pleaded a Fabre defense, alleging the responsibility of the nonparties who either deposited the rock in the road or failed to remove it in a timely manner. Citing Nash, the district court affirmed the striking of the defense because the defendant never specifically identified those nonparties. Thus, as interpreted by the estate and the First District, Nash would foreclose the County's Fabre defense because it is unable to identify the driver who struck the stop sign.
The County reads Nash differently. It argues that Nash did not require it literally to plead and prove the name of the nonparty tortfeasor. Rather, it maintains that it satisfied its burden by identifying a specific tortious act by a specific person, albeit a person whose name is unknown. This position may have merit, as indirectly suggested by the supreme court's decision in Merrill Crossings Associates v. McDonald, 705 So.2d 560 (Fla.1997). In that case a shopping center patron was shot by an unknown assailant in the center's parking lot. He sued the shopping center and its tenant, alleging they had provided inadequate security. For reasons we will turn to shortly, the supreme court held it was not error to exclude the nonparty assailant from the verdict form. Vis-a-vis the instant question, it is telling that the defendants' inability to furnish the assailant's name was not a basis for the court's decision. If Nash requires a defendant literally to furnish the name of the nonparty tortfeasor, it is curious that this requirement was not mentioned or applied in McDonald. See also Jones v. Budget Rent-A-Car Systems, Inc., 723 So.2d 401 (Fla. 3d DCA 1999) (identity of nonparty tortfeasor unknown, but case decided on other ground); Hasburgh v. WJA Realty, 697 So.2d 219 (Fla. 4th DCA 1997) (concluding that record adequately gave notice that *143 apportionment was at issue notwithstanding that identities of nonparty tortfeasors were unknown).
It happens that the circumstances in this case permit us to leave that question for another day. This is because the County's proof on the Fabre issue failed in another respect, although not exactly in the way the estate perceives. The estate points out that the County's evidence of the nonparty's responsibility for the accident did not intimate whether the stop sign was run over negligently, or by design. It argues that a defendant may have its fault apportioned only with that of a negligent tortfeasor, and not with the fault of one who acts intentionally.
We neither agree nor disagree with this proposition, because the supreme court decisions which have addressed this issue have done so in a far different context. In McDonald, the parking lot shooting case, the court held that public policy precludes a negligent defendant from reducing its liability by shifting it to another tortfeasor whose intentional criminal conduct was a foreseeable result of the defendant's negligence. 705 So.2d at 562. Further, the court determined that the gravamen of that suit was not an action based on negligence, but one based on an intentional tort, to which section 768.81 does not apply. See also Wal-Mart Stores, Inc. v. Coker, 714 So.2d 423 (Fla.1998) (involving suit for negligent failure to provide adequate security); Stellas v. Alamo Rent-Car, 702 So.2d 232 (Fla.1997) (involving rental car company's negligent failure to warn against driving rental car in dangerous neighborhood).
The same cannot be said of the instant case. Here, the destruction of the stop sign was not the foreseeable result of any negligence alleged against the County; the public policy underlying the McDonald decision simply is not implicated in this suit. Moreover, unlike McDonald, this case cannot be characterized as arising from an intentional tort. The estate itself has observed that there is no evidence of intentional conduct. And, in any case, the estate's action against the County springs not from the felling of the stop sign, but from the County's allegedly negligent failure to re-erect the sign regardless of why it went missing.[1]
For those reasons, we cannot say that the County's proof on the Fabre issue was deficient for failing to show that the nonparty's conduct was negligent as opposed to intentional. But see Jones, 723 So.2d at 402 (interpreting McDonald as a general holding that a negligent tortfeasor's fault may not be apportioned with that of a nonparty intentional tortfeasor). Rather, the evidence was insufficient because it did not demonstrate that the destruction of the stop sign was tortious at all. Outside the relatively rare circumstances implicating the principle of res ipsa loquitor, it is well-settled that the mere occurrence of a mishap does not prove that the mishap resulted from tortious conduct. See e.g., Miller v. Aldrich, 685 So.2d 988 (Fla. 5th DCA 1997). Here, the County proved only that a motorist drove over the stop sign. Its evidence left open the question of whydid the motorist act tortiously? Or was he or she forced off the road by another vehicle? Or did he or she swerve to avoid striking a person, animal, or object in the road? Without evidence on those questions, there simply is no Fabre issue for the jury to consider. See W.R. Grace & Co.Conn. v. Dougherty, 636 So.2d 746 (Fla. 2d DCA 1994) (noting that there must be evidence of fault of nonparty before jury can determine fault of nonparty).
We affirm the judgment in favor of Mr. Hargraves and Springer Motor Company. We reverse the judgment for Polk County, *144 and remand for a new trial in accordance with this opinion.
SALCINES, J., Concurs.
QUINCE, PEGGY A., Associate Judge, Concurs in result only.
NOTES
[1] The parties have not argued, and we leave aside, the question whether the County's independent duly to maintain the sign, or the passerby's telephone call notifying it of the dangerous condition, would be deemed in any event to have broken any causative link between the alleged unknown tortfeasor's actions and the accident.