863 So.2d 311 (2003)
Philip C. D'ANGELO, M.D., et al., Petitioners,
v.
John J. FITZMAURICE, et al., Respondents.
John J. Fitzmaurice, et al., Petitioners,
v.
Philip C. D'Angelo, M.D., et al., Respondents.
Nos. SC03-33, SC03-97.
Supreme Court of Florida.
November 26, 2003.
Esther E. Galicia of George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, Fort Lauderdale, FL, for Petitioners/Respondents.
Wagner, Vaughan & McLaughlin, P.A., Tampa, FL; and Joel D. Eaton of Podhurst Orseck, P.A., Miami, FL, for Respondents/Petitioners.
Wendy F. Lumish, Alina Alonso, and Cristina Alonso of Carlton Fields, P.A., Miami, FL, for Florida Defense Lawyers Association, Amicus Curiae.
BELL, J.
We have for review a decision of the Second District Court of Appeal in which that court certified the following question as one of great public importance:
IS IT APPROPRIATE TO SET OFF AGAINST THE DAMAGES PORTION *312 OF AN AWARD AGAINST ONE TORTFEASOR IN A MEDICAL MALPRACTICE ACTION THE AMOUNT RECOVERED FROM SETTLEMENT FROM ANOTHER FOR THE SAME INCIDENT CAUSING THE INJURY WHERE THE SETTLING ALLEGED TORTFEASOR WAS NOT INCLUDED ON THE VERDICT FORM?
D'Angelo v. Fitzmaurice, 832 So.2d 135, 137 (Fla. 2d DCA 2002). For the reasons set forth below, we answer the certified question in the affirmative as to economic damages. We hold that it is appropriate to set off against the economic damages portion of an award against one tortfeasor in a medical malpractice action the economic damages portion of any settlement recovered from a settling tortfeasor for the same incident causing the injury where the settling tortfeasor was not included on the verdict form. However, there should be no setoff for noneconomic damages.
We also review D'Angelo for certified conflict with Spruce Creek Development Co. v. Drew, 746 So.2d 1109 (Fla. 5th DCA 1999), and Flight Express, Inc. v. Robinson, 736 So.2d 796 (Fla. 3d DCA 1999), on an attorney's fees and cost question under section 768.79, Florida Statutes (1997). We accept jurisdiction in this case and approve the Second District's holding on the attorney's fees issue.[1]

I. FACTUAL AND PROCEDURAL BACKGROUND
John and Carole Fitzmaurice (the Fitzmaurices) filed a medical malpractice action against Phillip C. D'Angelo, M.D. and Phillip C. D'Angelo, M.D., P.A. (collectively referred to as Dr. D'Angelo). The Fitzmaurices alleged that a laparotomy pad was left inside John Fitzmaurice's abdominal cavity during an appendectomy performed by Dr. D'Angelo on August 23, 1997, at Charlotte Regional Medical Center. The Fitzmaurices reached a presuit settlement with Charlotte Regional that included both a cash settlement and the forgiveness of an outstanding hospital bill. Under the terms of the settlement, the Fitzmaurices received an undifferentiated lump sum payment of $200,000, and the hospital "discharge[d] any further obligations for payment of any outstanding bills which are due or owing" to the hospital for services rendered as a result of the procedure.
The case proceeded to trial against Dr. D'Angelo. Dr. D'Angelo defended the medical malpractice action on the theory that the hospital's negligence alone had caused the pad to remain in Mr. Fitzmaurice's abdomen and that the plaintiffs had sued the wrong party. However, Dr. D'Angelo did not request that the hospital appear on the verdict form for apportionment of liability purposes.[2]
The jury returned a verdict finding Dr. D'Angelo negligent.[3] Dr. D'Angelo was *313 the only defendant on the verdict form; therefore, the jury did not apportion fault. The jury awarded Mr. Fitzmaurice $128,732.81[4] in past medical expenses and $200,000 for past noneconomic damages. Additionally, the jury awarded Mrs. Fitzmaurice $50,000 in past damages for loss of consortium.
Dr. D'Angelo filed a motion asking the trial court to set off against this damage award the entire amount of the hospital settlement. The trial court granted the motion as to economic damages and reduced the economic damages portion of the verdict by $67,980.47.[5] The trial court denied any setoff as to noneconomic damages. As a result, an amended final judgment was entered against Dr. D'Angelo awarding Mr. Fitzmaurice $260,752.34 and Mrs. Fitzmaurice $50,000.
Dr. D'Angelo appealed this setoff determination, and the Fitzmaurices cross-appealed. The district court of appeal rejected Dr. D'Angelo's arguments on appeal. It reversed the trial court's setoff order, holding that Dr. D'Angelo was not entitled to a setoff because the hospital was not included on the verdict form for apportionment of fault purposes. The court certified the question as being of great public importance.
Prior to trial, the Fitzmaurices served an offer of settlement upon Dr. D'Angelo. The offer was for $250,000 in settlement of both Mr. and Mrs. Fitzmaurice's claims. The offer did not specify the amount each spouse was willing to accept to settle his or her individual claims. Dr. D'Angelo rejected the offer. After trial, the Fitzmaurices requested an award of attorney's fees pursuant to section 768.79, Florida Statutes (1997). After setting off the jury verdict with the hospital settlement, the trial court did not have to consider the motion for attorney's fees because the new verdict was less than 125% of the settlement offer.
The Fitzmaurices filed another motion for attorney's fees with the district court of appeal, which the court considered after reversing the setoff. Dr. D'Angelo argued that the proposal for settlement was invalid because it contained a joint offer and did not specify the amount each spouse was willing to accept to settle his or her individual claims, in violation of Florida Rule of Civil Procedure 1.442(c)(3). The district court of appeal denied the motion for attorney's fees and certified conflict with Spruce Creek Development Co. v. Drew, 746 So.2d 1109 (Fla. 5th DCA 1999), and Flight Express, Inc. v. Robinson, 736 So.2d 796 (Fla. 3d DCA 1999).

II. CERTIFIED QUESTION OF GREAT PUBLIC IMPORTANCE
The district court failed to note in its opinion and certified question the distinction between noneconomic and economic damages setoffs. In our analysis, we address each type of setoff separately. We begin our discussion by referencing the relevant statutory scheme established by the three setoff statutes and the separate apportionment provisions of section 768.81, Florida Statutes (1997). We then review the critical difference between noneconomic and economic damages under this scheme by discussing each separately. Finally, we apply this distinction to the case before us.

*314 A. APPLICABLE LAW
The standard of review for the pure questions of law before us is de novo. See Armstrong v. Harris, 773 So.2d 7 (Fla. 2000). Therefore, no deference is given to the judgment of the lower courts.

1. Applicability of Section 768.81, Florida Statutes (1997)
Florida law regarding setoffs is found in sections 46.015(2),[6] 768.041(2),[7] and 768.31(5),[8] Florida Statutes (1997). Each of these statutes presupposes the existence of multiple defendants jointly and severally liable for the same damages. See Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc., 659 So.2d 249, 253 (Fla.1995). After these statutes were first enacted, the Legislature enacted section 768.81, Florida Statutes (1997). Section 768.81 eliminates joint and several liability for noneconomic damages and limits joint and several liability for economic damages. The pertinent part of the statute provides:
APPORTIONMENT OF DAMAGES. In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
§ 768.81(3) Fla. Stat. (1997).[9] Section 768.81(4) expressly provides that the statute applies to negligence cases, including professional malpractice cases.

2. Noneconomic Damages
In Wells, the Court considered the interrelationship between the three setoff statutes and the apportionment provisions of section 768.81. We highlighted the critical difference this interrelationship makes between economic and noneconomic damages. Wells filed suit against Tallahassee Memorial Regional Medical Center (TMRMC) and two other defendants. Wells settled with all the defendants except *315 TMRMC. Wells, 659 So.2d at 250. The jury was instructed to apportion fault, if any, among all the defendants. Id. The jury returned a verdict for economic and noneconomic damages, finding TMRMC 90% at fault and the other two defendants each 5% at fault. Id. TMRMC requested a setoff, arguing that the judgment should be reduced by the total amount paid by the settling defendants. Id. This Court concluded that the setoff statutes do not apply to noneconomic damages for which defendants are only severally liable pursuant to section 768.81(3), but held that the setoff statutes continue to apply to economic damages for which parties continue to be subject to joint and several liability. Wells, 659 So.2d at 253.
To facilitate the pretrial application of this differentiation, the Court adopted a rule for determining the amount of the economic damages setoff in an undifferentiated economic and noneconomic damages settlement. See id. at 254. The Court held that each defendant is solely responsible for its share of the noneconomic damages and that only that portion of the settlement which represents a recovery for economic damages is available to offset a defendant's liability for economic damages. The portion of the settlement which represents economic damages is then based on the percentage of economic to noneconomic damages as determined by the jury.[10]See id.
The following year in Nash v. Wells Fargo Guard Services, Inc., 678 So.2d 1262 (Fla.1996), this Court outlined the procedure for apportioning the fault of a person or entity not joined as a defendant in the suit. Under the facts in Nash, we held that the outlined procedure was a prerequisite for the apportionment of noneconomic damages under section 768.81 and Wells. Nash, an employee of Methodist Hospital, brought a negligence claim against Wells Fargo, a contractor for Methodist. Nash, 678 So.2d at 1263. Nash's complaint did not name Methodist as a defendant. Id. After the close of testimony, Wells Fargo moved to have the jury apportion noneconomic damages between it and Methodist by including Methodist on the verdict form. We held that "in order to include a nonparty on the verdict form pursuant to Fabre, the defendant must plead as an affirmative defense the negligence of the nonparty and specifically identify the nonparty." Nash, 678 So.2d at 1264. We reasoned that "notice prior to trial is necessary because the assertion that noneconomic damages should be apportioned against a nonparty may affect both the presentation of the case and the trial court's rulings on evidentiary issues." Id. The Court further held that the defendant has the burden of proving that the injury was caused in part by the negligence of the nonparty. "If the pleading and proof requirements are met, a jury instruction should be given regarding the *316 apportionment of fault and the nonparty should be included in the appropriate section of the verdict form." Id. The Court stated in Nash:
Wells Fargo's answer to Nash's complaint did not include an affirmative defense that Methodist's negligence contributed to Nash's injuries nor was such a defense raised by Wells Fargo during the pretrial conference. In fact, throughout the trial, Wells Fargo asserted that Methodist's negligence was not at issue because Methodist was not a defendant in the case. Under these circumstances, we believe that Wells Fargo waived the defense that noneconomic damages should be apportioned to Methodist.
Nash, 678 So.2d at 1265. Because the defendant in Nash did not plead the negligence of a nonparty, the Court held that the defendant had waived its right to apportionment under section 768.81 and that it was, therefore, liable for 100% of the plaintiff's noneconomic damages. Such a result is consistent with Florida Rule of Civil Procedure 1.140(h)(1), which states: "A party waives all defenses and objections that the party does not present either by motion under subdivisions (b), (e), or (f) of this rule or, if the party has made no motion, in a responsive pleading except as provided in subdivision (h)(2)." This principle is reiterated in Clark v. Polk County, 753 So.2d 138 (Fla. 2d DCA 2000): "A defendant seeking to have the jury apportion its fault with that of a nonparty has the burden to plead and prove its entitlement to that benefit." Id. at 142.

3. Economic Damages
Unlike noneconomic damages, for which section 768.81 eliminated joint and several liability, the setoff statutes continue to apply to economic damages for which parties continue to be subject to joint and several liability. Wells, 659 So.2d at 253. Therefore, a settling defendant does not have to be found liable before an economic damages setoff can be given.
Six years after Wells, the Court in Gouty v. Schnepel, 795 So.2d 959 (Fla.2001), considered whether a setoff could be given when the settling defendant is expressly found not liable. In Gouty, this Court held that the setoff statutes could not be used to set off an economic damages award when the settling defendant is found to be 0% liable. Gouty, who had been shot with a gun owned by the defendant, Schnepel, sued both Schnepel and the gun's manufacturer, Glock, Inc. He settled with Glock prior to trial, but Glock remained on the verdict form as a Fabre defendant. The jury returned a verdict awarding economic and noneconomic damages and finding Schnepel 100% liable and Glock 0% liable. Schnepel requested a setoff in the full amount of the settlement with Glock. The district court of appeal certified the following question to this Court:
WHERE THE PLAINTIFF HAS DELIVERED A WRITTEN RELEASE OR COVENANT NOT TO SUE TO A SETTLING DEFENDANT ALLEGEDLY JOINTLY AND SEVERALLY LIABLE FOR ECONOMIC DAMAGES, SHOULD THE SETTLEMENT PROCEEDS APPORTIONABLE TO ECONOMIC DAMAGES BE SET OFF AGAINST ANY AWARD FOR ECONOMIC DAMAGES EVEN IF THE SETTLING DEFENDANT IS NOT FOUND LIABLE?

Schnepel v. Gouty, 766 So.2d 418, 419 (Fla. 1st DCA 2000) (emphasis added), quashed, 795 So.2d 959 (Fla.2001). This Court answered the certified question in the negative and stated: "We conclude, following our reasoning in Wells, that the applicability of the setoff statutes is predicated on the existence of other tortfeasors who are *317 liable for the same injury as the settling party." Gouty, 795 So.2d at 965. "Where a defendant is found 100% liable for the plaintiff's damages, the settling defendant who is not found liable cannot be considered a joint tortfeasor." Id. at 965. The Court also stated: "In this case, Schnepel was found 100% liable for Gouty's injuries and the jury expressly rejected a finding that Glock was a joint tortfeasor." Id. at 966. It should be noted that although the certified question concerned a defendant who was "not found liable," the actual defendant in the case was "found not liable." This distinction is not trivial. A defendant who is "not found liable" could be a defendant whose liability was not even considered by a jury, whereas a defendant may only be "found not liable" after a verdict. This distinction was recognized by the Second District Court of Appeal in D'Angelo.

B. APPLICATION OF LAW

1. Applicability of Section 768.81, Florida Statutes
D'Angelo argues that section 768.81 only applies to cases where there is more than one defendant at trial or where the defendant elects to proceed under section 768.81 by including the settling defendant(s) on the verdict form. Because D'Angelo was the only defendant at trial and was the only defendant that appeared on the verdict form,[11] he argues that section 768.81 does not apply and that he is entitled to a full setoff against both economic and noneconomic damages.
Section 768.81(4)(a), Florida Statutes (1997), states: "This section applies to negligence cases." No language in the statute limits its applicability to cases where more than one defendant appears on the verdict form. If section 768.81 were inapplicable in cases where only the nonsettling defendant appears on the verdict form, the section of the statute eliminating joint and several liability for noneconomic damages would not apply, and the nonsettling defendant would be entitled to a setoff for noneconomic damages in addition to economic damages. Such a result is contrary to legislative intent and this Court's reasoning in Wells and Nash.

2. Noneconomic Damages
Wells clearly stated that the setoff statutes do not apply to noneconomic damages for which defendants are only severally liable, but held that the setoff statutes do apply to economic damages for which parties continue to be subject to joint and several liability. To receive a setoff for noneconomic damages, defendants must follow the procedure outlined in Nash. The nonsettling defendant is obligated to file appropriate pleadings and to ensure that any settling party under Fabre appears on the verdict form. The jury must then allocate some portion of liability to the settling party or the nonparty. In this case, D'Angelo tactically chose not to include the settling party, Charlotte Regional, on the verdict. Consequently, no apportionment of liability was made by the jury. Accordingly, D'Angelo is not entitled to a setoff for noneconomic damages.

3. Economic Damages
In Gouty, the certified question answered by this Court was whether a setoff for economic damages is permitted where a settling defendant is "not found liable." Gouty, 795 So.2d at 960. We acknowledge that the Gouty opinion interchanges "not found liable" and "found not liable." However, the tortfeasor in Gouty was listed on the verdict form and was expressly found *318 not to be liable. The opinion states: "In this case, Schnepel was found 100% liable for Gouty's injuries and the jury expressly rejected a finding that Glock was a joint tortfeasor." Id. at 966. The question, therefore, is whether Gouty stands for the proposition that "a failure to establish liability will obviate set-off or that there must be a finding of no liability to preclude recovery." D'Angelo, 832 So.2d at 137. Glock appeared on the verdict form and was found 0% liable by the jury. Thus, the settling party was "found not liable." In D'Angelo, Charlotte Regional did not appear on the verdict form and was not apportioned liability. Although Charlotte Regional was "not found liable," the hospital also was not "found not liable." The D'Angelo court held: "Because the language of the specific question certified and answered was `not found liable,' we conclude this is the rule we should consider in deciding this case." D'Angelo, 832 So.2d at 137. Interpreting Gouty in this manner requires a jury finding of liability on the part of the settling party before a setoff for economic damages may be obtained. This interpretation is not supported by the "is or may be jointly and severally liable" language in the setoff statutes and is contradictory to this Court's holding in Wells. Accordingly, we limit the Gouty holding to cases where a settling defendant is expressly found not liable.
The Florida Defense Lawyers' Association, amicus curiae, argues that the Fitzmaurices will receive a windfall unless a full noneconomic and economic damages pro tanto setoff is given. This argument is without merit. As this Court stated in Wells:
Settlement dollars are not synonymous with damages but merely a contractual estimate of the settling tortfeasor's liability; they include not only damages but also the value of avoiding the risk and expense of trial. Given these components of a settlement, "there is no conceptual inconsistency in allowing a plaintiff to recover more from a settlement or partial settlement than he could receive as damages."
Wells, 659 So.2d at 252 (quoting Neil v. Kavena, 176 Ariz. 93, 859 P.2d 203, 206 (Ct.App.1993) (citations omitted)). The windfall argument was rejected in Wells, and we again reject the argument.
We hold that D'Angelo is not entitled to a noneconomic damages setoff in accordance with Wells and Nash but is entitled to an economic damages setoff in the amount of $98,096.22.[12]

III. CERTIFIED CONFLICT
The certified conflict in this case was resolved by this Court in Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So.2d 276 (Fla.2003), which disapproved the holdings in Flight Express and Spruce Creek. This Court held in Willis Shaw that a joint proposal of settlement which did not specifically apportion damages between plaintiffs was invalid and that the plaintiffs were, therefore, not entitled to attorney's fees and costs under section 768.79, Florida Statutes. Accordingly, we approve the holding of the Second District Court of Appeal on this issue.

*319 IV. CONCLUSION
We answer the certified question in the affirmative as to economic damages. We hold that it is appropriate to set off against the economic damages portion of an award against one tortfeasor in a medical malpractice action the economic damages portion of any settlement recovered from a settling tortfeasor for the same incident causing the injury where the settling tortfeasor was not included on the verdict form. However, there should be no setoff for noneconomic damages. We quash the Second District Court of Appeal's ruling on the setoff issue, approve the court's ruling on the attorney's fees issue, and remand this case to the trial court for entry of a judgment consistent with this opinion.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., concur.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
[2] This was a strategic decision. Defense counsel had filed a motion to amend the defendant's answer to add a Fabre defense naming the hospital as a joint tortfeasor but withdrew the motion in a pretrial conference. Fabre v. Marin, 623 So.2d 1182 (Fla.1993). Defense counsel later explained that this decision was designed to prevent the jury from splitting the blame between Dr. D'Angelo and the hospital and to persuade the jury to accept the defense's argument that the plaintiffs had sued the wrong party.
[3] Although the Second District opinion states that the "jury determined that 100% of the Fitzmaurices' damages were attributable to Dr. D'Angelo," D'Angelo, 832 So.2d at 136, the jury only answered a special interrogatory which asked whether there was "negligence on the part of Phillip C. D'Angelo, M.D., which was a legal cause of loss, injury, or damage to John J. Fitzmaurice?"
[4] This amount includes the $88,603.18 hospital bill that was forgiven by Charlotte Regional as part of its settlement with the Fitzmaurices.
[5] This figure represented 33.99% of the $200,000 undifferentiated lump sum payment by Charlotte Regional.
[6] 46.015 Release of parties.

....
(2) At trial, if any person shows the court that the plaintiff, or his or her legal representative, has delivered a written release or covenant not to sue to any person in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment.
[7] 768.041 Release or covenant not to sue.

....
(2) At trial, if any defendant shows the court that the plaintiff, or any person lawfully on her or his behalf, has delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.
[8] 768.31 Contribution among tortfeasors.

....
(5) RELEASE OR COVENANT NOT TO SUE.When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater....
[9] Section 768.81(3) was amended in 1999; however, the applicable version is that which was in effect when the cause of action arose. See Basel v. McFarland & Sons, Inc., 815 So.2d 687 (Fla. 5th DCA 2002).
[10] The formula used in Wells to determine the amount of the judgment is set forth below:

(1) economic damages / total jury award = percentage of jury's award allocated to economic damages;
(2) settlements × percentage of jury's award allocated to economic damages = portion of settlements that nonsettling defendant is entitled to set off;
(3) economic damages-portion of settlements that nonsettling defendant is entitled to set off-social security benefits = economic damages for which nonsettling defendant is liable;
(4) noneconomic damages × percentage of fault apportioned to nonsettling defendant = noneconomic damages for which nonsettling defendant is liable;
(5) economic damages for which nonsettling defendant is liable + noneconomic damages for which nonsettling defendant is liable + costs = nonsettling defendant's liability.
Wells, 659 So.2d at 254 n. 3.
[11] There were actually two defendants at trial, Philip C. D'Angelo, M.D. and Philip C. D'Angelo, M.D., P.A. The professional association was only vicariously liable and was therefore not apportioned liability.
[12] The economic damages setoff is computed using the Wells formula as follows:

1. Percentage of jury's award allocated to economic damages
= $128,732.81/$378,732.81 =.3399
2. Portion of settlement that nonsettling defendant is entitled to set off
= $288,603.18 (200K cash settlement + hospital bill forgiveness) × .3399 = $98,096.22.
Because the forgiven hospital bill was included in the calculation of economic damages, we believe it should also be included in the settlement amount to determine the setoff.