869 So.2d 719 (2004)
COUSINS CLUB CORP., Appellant,
v.
Carlos A. SILVA and Elizabeth Silva, individually and as legal guardians of Carlos E. Silva, Appellees.
Nos. 4D01-2392, 4D01-2751 and 4D01-4346.
District Court of Appeal of Florida, Fourth District.
April 7, 2004.
Rosemary B. Wilder of Marlow, Connell, Valerius, Abrams, Adler & Newman, Miami, for appellant.
Edna L. Caruso and Barbara J. Compiani of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, Justus W. Reid of Reid, Metzger & Bernhardt, P.A., West Palm Beach, and Gregg I. Shavitz of Shavitz Law Group, P.A., Boca Raton, for appellees.

ON MOTION FOR REHEARING
TAYLOR, J.
We grant appellant's motion for rehearing in light of the Florida Supreme Court's recent opinion in D'Angelo v. Fitzmaurice, 863 So.2d 311 (Fla.2003). We withdraw *720 our previous opinion issued on October 22, 2003, and substitute the following.
The parents of Carlos E. Silva sued Club Boca individually and as legal guardians of their son to recover damages for severe brain injuries sustained by Carlos in a promotional boxing match held at the nightclub. The jury awarded Carlos $12,045,000 and his father and mother $50,000 and $250,000 respectively for loss of filial consortium. We affirm the final judgment for Carlos Silva, but reverse the derivative award to his parents based on Cruz v. Broward County Sch. Bd., 800 So.2d 213, 217 (Fla.2001).
On cross-appeal, the Silvas argue that Club Boca was not entitled to any set-off for settlements with prior co-defendants, as they were not pled as Fabre non-parties, placed on the verdict form, nor determined by the jury to be liable. We affirm based on D'Angelo.
On November 3, 1997, Carlos Silva, then a nineteen-year-old college student, went to Club Boca to box in the club's Monday Night Boxing promotional event. Before the fight, Carlos signed a "Release, Assumption of the Risk and Indemnification Agreement." Carlos was to fight Charlie Mejia, a friend and former wrestling teammate. Mejia had boxed once before at the club, but Carlos had never been in a boxing match prior to this event.
Although the testimony at trial was not clear, some witnesses thought that within seconds into the first round Carlos got hit and fell through the ropes, hitting his head on a wooden stage located next to the ring. During the second round, Carlos received several blows to his head. The referee allowed the fight to continue. Club Boca did not have a ringside physician available for the boxing match.
At the end of the third round, Carlos just sat in his corner with his head down. The referee asked one of his friends to remove him so they could start the next fight. Finally, the referee had to help remove Carlos. Carlos sat in a chair and kept leaning his head forward. Within a few minutes, he was unresponsive although conscious. Then his head was completely down; he was unconscious, making snoring noises. His friends began requesting help. One friend ran to a bouncer and requested a paramedic. The bouncer finally came over and "yoked" Carlos up under the arms, dragging him outside. The bouncer thought that Carlos was drunk, even though one friend was screaming that Carlos was not drunk and should not be handled that way. Eventually someone called for medical assistance. Approximately forty-five minutes passed from the time that Carlos left the ring until he received emergency medical assistance.
According to the plaintiffs' expert medical testimony, Carlos sustained a subdural hematoma due to blows in the fight and/or hitting his head on the wooden stage and severe brain edema due to lack of oxygen. The experts testified that, although the subdural hematoma was significant, the severe brain edema was a result of the forty to forty-five minute delay in summoning medical attention. The lack of medical attention allowed the hematoma to get much larger and caused extremely high pressure to build up within Carlos' cranial cavity. Carlos' brain was so swollen that the neurosurgeon was forced to remove a part of the brain that controlled speech and motor functions on his right side. As a result, Carlos cannot speak or walk and remains in a partial vegetative state.
In their negligence count, the plaintiffs alleged that Club Boca was negligent in: (a) constructing the boxing ring adjacent to the fixed wooden stage in such a configuration as to be unreasonably dangerous to participants; (b) failing to provide a *721 licensed physician and/or medical personnel to monitor the fight and the welfare of the participants; (c) continuing the fight following Carlos' acceleration from the ring; (d) failing to monitor the health and welfare of Carlos prior to, during, and following the fight; (e) failing to place some form of mat or protection upon the adjacent fixed wooden stage; (f) failing to timely summon an ambulance; (g) negligently handling the impaired Carlos following the fight; (h) failing to have the referee monitor the health and welfare of Carlos; (i) permitting the announcer, promoter and/or referee to incite the participants to continue fighting; (j) failing to warn the boxers of the lack of medical attention; (k) failing to make certain that the participants could not come in contact with the adjacent stage; (l) failing to warn the boxers that the adjacent stage was within such close proximity and was dangerous; and (m) failing to appropriately regulate the level and skill of the boxers they paired to fight. Club Boca asserted as affirmative defenses that the release and waiver signed by Carlos barred the action, that Carlos assumed the risks inherent in the boxing match, and that Carlos was comparatively negligent.

Release and waiver
In a motion for summary judgment, Club Boca asserted that the release and waiver signed by Carlos completely barred this action. The document entitled "Release, Assumption of Risk and Indemnification Agreement" stated in pertinent part:
In consideration of my participation in the above entitled event, and with the understanding that my participation in Monday Night Boxing is only on the condition that I enter into this agreement for myself, my heirs and assigns, I hereby assume the inherent and extraordinary risks involved in Monday Night Boxing and any risks inherent in any other activities connected with this event in which I may voluntarily participate.
We conclude that the trial court properly denied Club Boca's motion for summary judgment. The court determined that the release did not bar the plaintiff's lawsuit, because under the agreement the plaintiff assumed only the risks inherent in the boxing match, and thus, released liability only for injuries resulting from his voluntary participation in the boxing match. Further, the court ruled that the release did not clearly and unequivocally release Club Boca from liability for injuries to the plaintiff as a result of its own negligence.
We agree that, based on the language of the release, any negligence on the part of Club Boca fell outside the scope of the release. Thus, while Carlos may have been precluded from recovering for injuries resulting from any dangers inherent in boxing, he was not barred from recovering for injuries resulting from Club Boca's negligence. See Van Tuyn v. Zurich Am. Ins. Co., 447 So.2d 318 (Fla. 4th DCA 1984); O'Connell v. Walt Disney World Co., 413 So.2d 444, 447 (Fla. 5th DCA 1982). The trial court therefore properly denied Club Boca's motions for summary judgment, directed verdict, and a new trial on liability.
In determining that Carlos' damages were mostly caused by Club Boca's negligence, rather than by any inherent risks in boxing, the jury specifically found that Club Boca was negligent in: (1) failing to provide or obtain medical treatment for Carlos; (2) failing to maintain its premises in a reasonably safe condition; and (3) failing to properly supervise the Monday *722 Night Boxing event.[1] The jury attributed 85% negligence to Club Boca and 15% to Carlos. It awarded $912,000.00 for past medical expenses; $8,500,000 for future medical expenses; $1,633,000 for future loss of earning ability; $100,000 for past pain and suffering and loss of enjoyment of life; and $900,000 for future pain and suffering and loss of enjoyment of life. The total award for Carlos Silva was $12,045,000. Carlos' mother was awarded $250,000 and his father $50,000 for loss of filial consortium. The trial court entered a final judgment on the verdict, reducing it to account for Carlos' 15% comparative negligence.

Loss of filial consortium
Club Boca argues that the trial court erred as a matter of law in allowing Carlos' parents to recover for loss of filial consortium. The plaintiffs properly concede that under Cruz, damages of parents for loss of filial consortium are limited to the period of a child's minority. 800 So.2d at 217. Because Carlos had already reached the age of majority at the time he was injured, we reverse the award to Carlos' parents.

Setoff for settlements
Post-trial, Club Boca moved for a setoff of the plaintiffs' pre-trial settlement with prior defendants (premises owners and lessors) against the jury award. The court allowed the setoff, but only against economic damages, pursuant to Wells v. Tallahassee Memorial Regional Medical Center, Inc., 659 So.2d 249 (Fla.1995). Club Boca appealed, contending that the setoff should have included non-economic damages. The plaintiffs cross-appealed, arguing that, under Gouty v. Schnepel, 795 So.2d 959 (Fla.2001), there should have been no setoff whatsoever, because the settling defendants did not appear on the verdict and the jury did not apportion liability as to them.

Non-economic damages
First, we conclude that the trial court properly determined that no setoff should be made from non-economic damages. In Wells, the supreme court reviewed the apportionment of damages statutes, section 768.81(3), Florida Statutes (Supp.1988), and Florida's setoff statutes, sections 46.015, 768.041, and 768.31. Recognizing that under section 768.81(3), each defendant is solely, not jointly, responsible for his or her share of non-economic damages, and that the setoff statutes presuppose the existence of multiple defendants jointly liable for the same damages, the court concluded that setoff statutes do not apply to non-economic damages. Wells, 659 So.2d at 253.

Economic damages
Next, we conclude that the trial court was correct in allowing a set-off as to economic damages. The propriety of setting off a settlement against economic damages awarded by the jury where the settling party was not on the verdict form was recently decided by the Florida Supreme Court in D'Angelo. In D'Angelo, a defendant doctor had brought a motion to set-off against the damage award the settlement the patient had reached with a hospital that had not been included on the verdict form. The supreme court held as follows:
We hold that is appropriate to set off against the economic damages portion of an award against one tortfeasor in a medical malpractice action the economic damages portion of any settlement recovered from a settling tortfeasor for the same incident causing the injury *723 where the settling tortfeasor was not included on the verdict form. However, there should be no setoff for noneconomic damages.
D'Angelo, 863 So.2d at 312.
This decision controls the instant case. Accordingly, we affirm the trial court's order granting the set-off of plaintiffs' settlement from economic damages.
In sum, for the reasons stated above, we affirm the final judgment for Carlos Silva; reverse the consortium award to Carlos' parents; affirm the trial court's orders disallowing setoff of plaintiff's settlement from non-economic damages; and affirm the order granting the setoff from economic damages.
AFFIRMED in part; REVERSED in part and REMANDED.
KLEIN and SHAHOOD, JJ., concur.
NOTES
[1] The jury found no negligence on the part of the boxing promoter or Mejia.