On Motion for Clarification
 

 RAMIREZ, C.J.
 

 We grant appellee, Keith Wilson’s motion for clarification. The opinion dated August 4, 2010, is withdrawn to the extent that the second to the last paragraph has been changed, and the opinion below is substituted in its place.
 

 The defendant, Miami-Dade County, appeals the trial court’s Order Granting Plaintiffs Motion for Temporary Injunction and Denying Defendant’s Motion to Dismiss. Finding that the trial court abused its discretion, we reverse the trial court’s order and remand the case for the plaintiff, Keith Wilson, to exhaust his administrative remedies.
 

 Wilson owns a nightclub located at 728 N.W. 79th Street, Miami, Florida. The club is a two-story structure with a mezzanine that was built in-between the original first and second floors. Wilson has owned the club since 1992. He pulled a permit in 1994 to perform electrical work at the property, including outlet wiring for receptacle; AC and refrigeration system electrical work; commercial fixtures and lights; electrical feeders and special outlets up to 60 amps. Wilson never completed the electrical work, never had a final inspection, and never closed the permit. He recently evicted his tenant from the property and started running parties for the public at the club himself. Wilson intends to re-open the club on a full time basis after it has been cleaned up from the prior tenant’s use of the space.
 

 In May 2007, County fire inspectors conducted an inspection of the property and reported several violations to the County’s Building Department. The Fire Department reported: “Second story built between first and original second story. Not enough headroom. No exits from second story. No separation from first story. Many open electrical boxes. Romex type wiring used from some of the lighting.”
 

 County Building Department inspectors inspected the property in June 2007. Finding multiple violations at the property, the County mailed Wilson a Notice of Violation documenting the various violations.
 

 The violations identified on the Notice of Violation were never corrected, so, on January 9, 2008, the County issued a Uniform Civil Violation Notice, Citation B040751 (the “Citation”), to Wilson for “violation of 8-1 of the Code of Metropolitan Dade County” for “[fjailure to obtain all required building permits for interior remodeling adding additional floor as required under Chapter 105.1 of the Florida Building Code.” The Citation was posted at Wilson’s property. The Citation gave Wilson two possible courses of action: (1) pay a penalty of $510.00 and correct the violations by February 9, 2008, or (2) request
 
 *1268
 
 an administrative hearing on or before January 27, 2008.
 

 That same day, on January 9, 2008, Wilson appealed the Citation and requested a hearing. Wilson’s request was submitted on his personal letterhead, which identified his address as: “10501 N.W. 7th Avenue, Miami, Fla. 33150.”
 

 On August 12, 2008, the County scheduled an administrative hearing on the Citation for September 4, 2008, in accordance with Wilson’s request and sent multiple copies of the Notice of Administrative Hearing to Wilson. The copies were sent to Wilson at two addresses: (1) his address of record with the County — P.O. Box 1445, Miami, Florida 33137, and (2) the address on the letterhead Wilson used when he requested the hearing on the Citation — 10501 N.W. 7th Avenue, Miami, Fla. 33150. The Notice of Administrative Hearing states that the “hearing date shall not be postponed or continued unless a request for continuance, showing good cause for such continuance is received in writing by the Hearing Officer,” and makes clear that “failure to attend the hearing ... shall constitute a waiver of your right to a hearing. Such waiver shall constitute an admission of the violation and may result in additional penalties without the need for issuance of additional civil violation notice.”
 

 As scheduled, the administrative hearing on the Citation was held on September 4, 2008. Wilson did not appear at the hearing. Hearing Officer Rafael Licea found Wilson guilty of the violations set forth in the Citation, fined Wilson $835.00 in penalties and costs, and required Wilson to get the property into compliance within thirty days. Hearing Officer Licea’s Findings of Fact and Conclusions of Law also informed Wilson that he had thirty days to appeal the decision.
 

 On September 8, 2008, Wilson contacted the County regarding the hearing on the Citation and informed the County that he had sought a continuance of the September 4, 2008, hearing. Although the County was not aware of any request by Wilson for a continuance, Wilson’s call to the County on September 8, 2008, made it clear that Wilson had known about the September 4, 2008 hearing before it took place.
 

 During the September 8, 2008, telephone call, the County advised Wilson of the outcome of the hearing. Wilson chose not to appeal the decision. Because the various violations at Wilson’s property were never brought into compliance after the September 4, 2008, hearing, the County determined that the electrical-related violations continue to jeopardize public safety. Pursuant to Florida Building Code Section 111.3, County Electrical Section Superintendent Amado Diaz, in his capacity as the “Building Official”, ordered the power to be disconnected at Wilson’s property because disconnection was “necessary to eliminate an immediate hazard to life or property.” As a result, on August 11, 2009, the County posted a Notice of Intent to Disconnect Power (“Notice of Intent”) at Wilson’s property and sent the notice to Wilson and FPL.
 

 Due to Wilson’s continuing violations at the property, his failure to pay the original penalty assessed at the September 4, 2008, hearing, and his failure to timely appeal Hearing Officer Licea’s decision from the September 4, 2008, hearing, additional penalties accrued on the original fine ordered by Hearing Officer Licea. On September 18, 2009, the County sent Wilson a Notice of Assessment of Continuing Penalties. Wilson immediately requested a hearing on the Continuing Penalties Assessment. The hearing requested was scheduled for November 5, 2009.
 

 
 *1269
 
 At the hearing on November 5, 2009, Wilson appeared and attempted to present a case on the Citation. The Hearing Officer, Barbara Tracy, informed Wilson that the hearing was strictly limited to whether the continuing penalties assessed were due and owing. As a result, Wilson sought, and was granted, a continuance of the hearing on the Continuing Penalties Assessment.
 

 Wilson then filed suit in the trial court seeking a temporary injunction. On December 4, 2009, in compliance with the Notice of Intent, FPL disconnected the power at Wilson’s property for the final time, padlocking the meter to prevent further tampering. On November 30, 2009, Wilson filed a Verified Complaint and Motion for Emergency Injunction (the “Motion”). Through the Motion, Wilson sought to prevent the County from demolishing his budding.
 

 On December 11, 2009, the trial court conducted an evidentiary hearing on Wilson’s Motion. The County started the hearing by assuring Wilson and the trial court that the building was not scheduled for demolition. Wilson called musician Jimmy Lee Moore to testify about the amount of time the mezzanine had been at the property. Moore, however, could not provide any testimony on the history of the Building Code violations connected with the property or the various electrical safety issues there.
 

 In closing, Wilson called Stephen Hicks, an unlicensed electrician to testify. Hicks stated that, although he had never done any electrical work on the property and was not aware that there were open permits for electrical work to be done on the property, he did not see any safety issues at the property when he walked around the property before coming to the hearing.
 

 The County then presented its case. First, the County called Monty Lee, the head of the Unsafe Structures Division of the County’s Building Department, who made it clear that Wilson’s budding was not scheduled for demolition. In addition, Lee explained the processes followed for Unsafe Structures proceedings and Code Enforcement proceedings. The County’s Electrical Section Superintendent Amado Diaz then testified about the life safety hazards at the property that led to his issuance of the Notice of Intent to Disconnect Power. Mr. Diaz explained that, as the “Building Official” under Florida Building Code Section 111.8, he has the authority to make the decision to issue the Notice of Intent at Wilson’s property based on the immediate life safety hazards at the site, which he made. Finally, Diaz provided testimony, based on his conversations with FPL representatives, that the power had originally been disconnected by FPL, pursuant to the County’s Notice of Intent on September 6, 2009, but that Wilson or someone on Wilson’s behalf had tampered with the meter multiple times in order to illegally restore power to the property. Diaz explained that FPL finally padlocked the meter on December 4, 2009, in order to avoid further tampering.
 

 The County concluded its case by calling County Code Enforcement employee, Shauna Mitchell, who testified that she had a conversation with Wilson on September 8, 2008, concerning: (1) his purported request for a continuance of the September 4, 2008, hearing on the Citation, and (2) the results of the September 4, 2008, hearing. Additionally, Ms. Mitchell testified that the Notice of Administrative Hearing setting the September 4, 2008, hearing had been sent to Wilson at his address of record with the County and at the address on his request for an administrative hearing of the Citation (10501 N.W. 7th Avenue, Miami, Fla. 33150).
 

 
 *1270
 
 The trial court granted Wilson’s Motion for Temporary Injunction on December 14, 2009, and ordered the County to “reinstate the power to the Plaintiffs property forthwith.” The trial court found that Wilson had been denied due process through the administrative hearing process on the Citation, and therefore, the trial court was entitled to intervene in the administrative hearing process, thereby essentially excusing Wilson from the requirement to exhaust his administrative remedies. The County filed its Notice of Appeal on December 14, 2009, and the trial court case was automatically stayed.
 

 On December 17, 2009, Wilson filed an Emergency Motion for order to show cause why the County should not be held in contempt and argued that the County was not entitled to an automatic stay of the trial court proceeding, and therefore, was in violation of the lower court’s December 14th Order by failing to restore power to the property immediately. After considering case law submitted by the County and the arguments of both parties, the trial court held that the stay of the trial court case was automatic, and the County was not in contempt of its December 14th Order. On December 22, 2009, Wilson filed his Amended Emergency Motion to Vacate Automatic Stay. The trial court conducted an emergency hearing on the Emergency Motion to Vacate Automatic Stay and ruled that the automatic stay would be vacated, and the power to Wilson’s property restored, under the following conditions: (1) the County would be given access to Wilson’s propei’ty at an agreed upon date and time for the purpose of inspecting the premises to assess all life safety issues, and (2) Wilson’s property would remain unoccupied by the public until the results of the inspection were brought back to the lower court for assessment and further decision. The County then filed this appeal.
 

 The County now contends that the trial court erred in granting the temporary injunction because Wilson is not likely to succeed on the merits because he failed to exhaust his administrative remedies. In addition, the County alleges that Wilson was not denied due process in light of the immediate safety hazards and because the County followed the legal requirements for notice of the September 4, 2008, hearing. We agree with the County and now reverse.
 

 The trial court erred in holding that the County denied the owner due process by not giving proper service. Even if the owner did not receive notice that the hearing was to take place, if the owner found out, during the appeal time that an order was issued, it is incumbent on the owner to take some action. That action could be to request another hearing date and that the record be reopened. If that was unsuccessful, then the owner would need to appeal the order and would have to file a notice of appeal within thirty days.
 

 Whether the owner was given proper notice of the September 4, 2008, hearing is a question of law. The standard of review for questions of law is de novo.
 
 D’Angelo v. Fitzmaurice,
 
 863 So.2d 311 (Fla.2003);
 
 Armstrong v. Harris,
 
 773 So.2d 7 (Fla. 2000).
 

 Due process does not require the affected person receive notice; it only requires that the government give notice.
 
 Dawson v. Saada,
 
 608 So.2d 806 (Fla. 1992);
 
 Little v. D’Aloia,
 
 759 So.2d 17, 20 (Fla. 2d DCA 2000). The record indicates that notice of the hearing was sent to the owner at both his address of record with the County as well as the address listed at the top of his request for an administrative hearing. Notice is adequate for due process concerns if it is “reasonably calculated to inform persons with known interests in
 
 *1271
 
 a proceeding.”
 
 Dusenbery v. US.,
 
 534 U.S. 161, 177, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002).
 

 It is evident from the record that the owner had notice of the September 4, 2008, hearing. We have the notation in the county record and the testimony of the worker that the owner called four days after the hearing. The owner contacted the County on September 8, 2008, alleging that he had sought a continuance of the September 4, 2008, hearing. The County was not aware of any request for a continuance by the owner, but his actions demonstrate a clear admission of his knowledge of the hearing. Even if he did not know of the hearing, the owner had an additional twenty six days to either request that the hearing be reopened or to file an appeal. In spite of this, the owner chose not to appeal the decision. Therefore, reversal is in order.
 

 We thus reverse the trial court’s non-final order granting Wilson a temporary injunction, remand the case to the trial for further proceedings consistent with this opinion.
 

 Reversed and remanded with directions.